GABRIEL, Respondent, v. ST. LOUIS, IRON MOUN- TAIN & SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 12, 1909.

1. CARRIERS OF PASSENGERS: Negligence: Prima-Facie Case. In an action by a passenger against a railroad company for in- juries received by a collision with some freight cars which escaped control and ran against the train on which plaintiff was riding while it was standing on a siding, the evidence is exam- ined and held sufficient to make out a prima-facie case showing that the collision was violent and unusual so as to show neg- ligence on the part of the defendant.

2 .————: ————: Rules Governing Passengers: Notice of Rules. Under the law of Arkansas where a railroad company posted notices in the passenger cars warning passengers not to stand in the aisles of the cars when the train was in motion or while switching was being done, a passenger who was injured in a collision while standing in the aisle, by reason of so stand- ing in the aisle, could not recover for the injuries received.

3. ————: ————: Conflict of Laws. Where an injury to a pas- senger on a railroad train occurred in the State of Arkansas, the liability of the company in an action brought in Missouri should be determined by the rules of common law prevailing in Arkansas as interpreted by the Supreme Court of that State.

Appeal from Madison Circuit Court.—*Hon. Chas. A. Killian,* Judge.

REVERSED.

*James F. Green* and *Ernest A. Green* for appellant.

Such a plain case of contributory negligence on part of plaintiff was disclosed by the evidence that the court should have given the peremptory instruction requested by defendant. Hedrick v. Railroad, 195 Mo. 121; Guffy v. Railroad, 53 Mo. App. 462; Wait v. Railroad, 165 Mo. 612; Barkley v. Railroad, 148 Mo. 141; Hite v. Railroad, 130 Mo. 139; Portucheke v. Railroad, 101 Mo. App. 52; Erwin v. Railroad, 94 Mo. App. 289; Saxton v. Railroad, 98 Mo. App. 503; Young v. Railroad, 93 Mo. App. 274; Shields v. Railroad, 87 Mo. App. 645; Morris v. Railroad, 62 S. W. 1012; Pryer v. Railroad, 85 Mo. App. 376; Crum v. Railroad, 71 Ark. 590.

*Wm. S. Gabriel* and *Conkling & Rea* for respondent.

A railroad is liable for a sudden, violent and unusual jerk or collision which injures a passenger. Fullerton v. Railroad, 84 Mo. App. 498. Witnesses who are not even experts may describe facts of a collision sufficiently to indicate to the jury the extent, force and character of the same. Non-expert witnesses are competent to describe physical happenings. Binsbacher v. Transit Co., 108 Mo. App. 1; Stanley v. Railroad, 121 Mo. App. 537.

STATEMENT.—The defendant owns and operates a line of railroad running from Batesville to Newport, in the State of Arkansas. On September 18, 1906, a mixed train, consisting of one passenger coach and twelve box cars, was run over the road from Batesville to Newport. Plaintiff purchased a ticket at Batesville

which entitled him to passage to Newport, and entered
the passenger coach. The train proceeded about thirty-
three miles to Paroquet, a station on the road. Here
the train crew cut the engine and two box cars from the
train and, leaving the remainder of the cars standing
on the main track, proceeded to do some switching.
Three freight cars were picked up on a siding and haul-
ed on to the main track in the rear of the cars left stand-
ing thereon. The coupling of the forward one of these
three cars came unfastened and the three cars ran back
and collided with the passenger coach with such force
as to cause plaintiff, who was standing in the aisle,
to fall on his back. He struck the corner of a seat and
was thrown to the floor. The fall resulted in bruises
and nervous shock and the action is to recover for these
injuries. The petition alleges that by reason of said
injuries plaintiff "has suffered great pain in mind and
body and a severe nervous shock; that he has been for
a long time, namely, for eight weeks, prevented from
pursuing his usual avocation of a traveling salesman.
Plaintiff says that by reason of the premises he has been
damaged by the wrongful acts of defendant aforesaid
in the sum of three thousand dollars."

The answer was a general denial and a plea of
contributory negligence. The trial resulted in a ver-
dict and judgment for plaintiff for $600, from which de-
fendant appealed.

The collision between the passenger coach and the
three cars that broke loose from the engine was describ-
ed by Turnock, one of plaintiff's witnesses, as a "very
violent collision," by Hinton as "very much out of the
ordinary, and unusual"; and the evidence shows that
all persons, who were standing in the aisle or on the
platform of the car were injured by the force of the
impact. Plaintiff testified that when the train stopped
at Paroquet he felt chilly and walked around; that
there was an altercation between the ticket auditor and
a negro woman and he started toward the door to lis-

ten to the talk, when there was a very violent collision, which seemed to lift him off his feet and threw him backward over the aisle and against the corner of a seat to the floor. Plaintiff then testified, over the objection of defendant's counsel, that the collision also injured several other people, other than himself, who were on the train. Plaintiff was helped from the floor by some of the passengers and placed in a seat and carried to Newport, Arkansas, where he received medical attention from the company's physician. He also testified, over the objection of defendant's counsel, that his average weekly earnings at that time were about $75.

Plaintiff went from Newport to his home at Fredericktown, Mo., and was allowed by the court, over the objection of defendant's counsel, to state that the trip from Newport to Fredericktown caused him extreme pain and was severe on the wound. He also testified, over the objection of defendant's counsel, that, as the result of his injuries, from that time up to the bringing of this suit, he had suffered considerable nervous shock, and had been unable to do his work as a jeweler; that he had been unable to write without hurting his eyes considerably, and had been unable to sleep soundly and was also unable to write letters owing to the severe nervous strain caused by this injury. On cross-examination plaintiff testified that the passengers who were injured were standing either in the aisle or on the platform at the time of the collision, except a little child, about four years old, who was injured while sitting down; that he did not see any warning sign against standing in the aisle or on the platform and did not think there was one; that between Batesville and Paroquet he went out on the rear platform some two or three times, because it was disagreeable on the inside; that the only medical at-

tention he had ever received had been from the company's physician at Newport (Dr. Willis) and at Fredericktown (Dr. Newberry); that he had never employed any physician and had not paid anything for medical services. Witness stated that he did not remember whether he had been standing in the aisle one, two or three minutes but it was about that length of time before the cars were "jammed into each other."

The conductor of the train testified that before the accident he had requested plaintiff, whom he found standing on the platform, to go inside and sit down, in compliance with a standing order of the railroad company's officers not to allow passengers to stand on the platform, or in the aisles of cars as it was dangerous when the train was in motion or when switching was being done. He also produced and identified the following warning notice, which he testified was posted on the sides of the passenger coach:

"Missouri Pacific Railroad, St. Louis Iron Mountain and Southern Railroad. Leased, Operated and Independent Lines. Warning Notice. Danger. Passengers are forbidden to occupy movable seats or stand up in this car while it is in motion or when switching is being done.

————————, General Superintendent.

————————, Assistant Superintendent.

"Approved, Russell Harding, Third Vice-President and General Manager."

Witness also testified that the copy of the above notice produced in evidence was posted over the door, and was in front of plaintiff and not over six feet from him when he was injured.

The evidence shows the seating capacity of the coach would accommodate twenty-eight passengers and that there were about twenty aboard when the accident occurred; it also shows that plaintiff did not sit down at any time while he was on the car. Defendant offered in evidence the decision of the Supreme

Court of Arkansas in the case of Krumm v. Railway Co., 71 Ark. 590. Plaintiff testified in rebuttal, that the conductor did not order or warn him not to stand on the platform or in the aisle.

At the close of plaintiff's case, defendant offered a demurrer to the evidence and renewed the demurrer at the close of all the evidence.

The court gave the following instructions for plaintiff:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff, Robert J. Gabriel, in September, 1906, while a passenger on a mixed train of defendant was injured in a collision of said train train near Paroquet, Arkansas, and that said collision was not the result of the usual and ordinary operation of said mixed train, but was the result of the negligence and carelessness of the defendant, its servants and agents in charge of said train, then your verdict will be for the plaintiff, unless you further find that said injury was caused by plaintiff's own negligence directly contributing thereto.

"2. If the jury find for the plaintiff they will allow him damages in such sum as under the evidence will reasonably compensate him for the pain in mind and body by him suffered, if any, from said collision, and for the nervous shock if any, by him thereby sustained, previous to December 10, 1906, the date of the institution of this suit; also for the loss of time, if any, by him thereby sustained from his usual avocation, not to exceed eight weeks; the entire recovery not to exceed three thousand dollars."

The court of its own motion instructed the jury as follows:

"The court instructs the jury that if you find that the plaintiff received an injury while the train on which he was riding was engaged in switching and that such injury was the result of an unforeseen accident and not the result of any negligence, or carelessness

on the part of defendant or its employees, then your verdict must be for the defendant."

The court refused the following instruction asked by defendant:

"7. The court instructs the jury that if you find that the plaintiff received an injury while the train on which he was riding was engaged in switching and that such injury was the result of an accident, then your verdict must be for defendant."

GOODE, J. (after stating the facts).—Defendant insists that plaintiff should have been nonsuited for two reasons: first, because the evidence failed to show defendant was guilty of any negligence and, second, because plaintiff's own evidence conclusively shows he was guilty of negligence which directly contributed to his injury. In regard to the first contention, we think defendant is clearly in error. The evidence is all one way that the impact of the cars was sudden, violent and unusual, in fact, that there was a collision which caused plaintiff's injury. This evidence was undoubtedly sufficient to make a prima facie case. [Fullerton v. Railway Co., 84 Mo. App. 498.] In respect to plain-·tiff's contributory negligence, the evidence is also all one way that he is a traveling salesman and knew the train crew was engaged in switching at Paroquet and, from experience, must have known that in coupling freight cars there is necessarily more or less jar. Seats were provided for him and signs were posted in the car, notifying him of the danger of standing in the aisle. It is true, plaintiff testified he did not see these signs, and denied that the conductor warned him, but the signs were posted in conspicuous places in the car and plaintiff could have seen them, if he had looked, and it must be held that by providing a seat for plaintiff and posting warning signs in the car, the defendant company discharged its duty to warn him of the danger of standing in the aisle while the train was in motion,

or when switching was being done, and plaintiff should be charged with notice of such danger. Indeed, from his experience as a traveling salesman, notice of the danger should be imputed to him, though he was not warned by the signs, or by the conductor, and the case falls squarely within the ruling of the Supreme Court of Arkansas in the Krumm case. In that case the evidence showed that Krumm was riding in a caboose of a freight train and was thrown down and injured by a collision between two parts of the train which had become uncoupled. At the time of his injury Krumm was standing near a cooler where he had gone to get a drink but stood there two or three minutes waiting for the water to cool before drinking. Warning notice not to stand while the train was in motion was posted in the caboose, but Krumm did not read it. The trial court nonsuited him and he appealed. Riddick, J., writing the opinion of the court, commenting on the evidence said: "The notice was headed by the words, 'Warning Notice, Danger,' in large capital letters, and was well calculated to attract attention. If, after having seen it, plaintiff failed to read it, the fault was his. The rule was a reasonable one, for it is well known that it is not practicable to operate freight trains without occasional jars and jerks calculated to throw down and injure careless and inexperienced persons standing in the car. This rule therefore was necessary to protect passengers on such cars from injury. . . . We are of the opinion that the circuit court was right in holding that the testimony of the plaintiff himself showed that his injury was due to his own carelessness. The judgment is, therefore, affirmed."

We are indebted to the Hon. Charles C. Bland, formerly Presiding Judge of this court, for the foregoing statement of facts and law. It is insisted the rules of law governing the defense of contributory negligence in our state ought to be applied to the determination of the controversy, and not the rules in force

in Arkansas where the accident happened, if the law is different in the two states. This proposition is unsound; for in Root v. Railway, 195 Mo. 348, our Supreme Court held to the contrary, saying it was settled law that in a transitory common law action, brought in a State other than where the injury happened, the interpretation of the common law obtaining in the State where the action accrued will govern; that if a litigant had no case in the courts of the State where he was injured, he had none elsewhere; citing numerous authorities. As the decision of the Supreme Court of Arkansas was rendered on facts not materially different from those involved in the case at bar, and was adverse to a recovery on such facts, the judgment must be reversed. It is so ordered. *Nortoni, J.,* concurs; *Reynolds, J.,* not sitting.