CATHERINE HACKLER, Respondent, v. MISSOURI PACIFIC RAILWAY CO., Appellant.

Kansas City Court of Appeals, February 19, 1912.

NEGLIGENCE: Switching Cars: Evidence: Demurrer. A boy thirteen years old, but small for his age, being only four feet and three inches tall, was employed by a construction company to carry drinking water to laborers working for such company in unloading gravel from defendant's cars. Defendant's employees put the cars in place and switched them out as they were unloaded. The boy had got upon the partly unloaded car and passed cups of water to the men and in a few minutes afterward, while he was yet in the car, defendant's engine and crew coupled onto the car to switch out two already unloaded by making a flying switch. The partly unloaded car in which the boy was, had sideboards four feet and ten inches high, and the gravel extended up to within eighteen inches of the top. There was evidence tending to show the boy kneeled down on the gravel at the end of the car, leaving only his head and shoulders above the side, and upon that statement of facts plaintiff grounded her case. But there was other evidence tending to show that he was standing up on the gravel at the end of the car. The engine, after getting up con-

siderable speed, stopped suddenly so as to let the two empty cars run to where they were wanted.' The jerk threw the boy over the end of the car onto the track, where he was run over and killed. It was held not to be within the bounds of reason to say that the boy could have been thrown out of the car in the kneeling position in which plaintiff's testimony placed him and a judgment was reversed.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich,* Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *E. J. White* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence. The deceased son of the plaintiff, was at most a bare licensee upon the defendant's cars and his presence on the car, is not shown by the record to have been known by the employees of the defendant in charge of the engine, nor did the plaintiff prove any facts which would place upon the defendant the duty of changing the ordinary custom of shunting its cars, to avoid injury to the plaintiff's son, but having had no business on the car, and his service as water-carrier being with other than the employees of the defendant, the record fails to show the breach of any duty toward the plaintiff's son, sufficient to charge the defendant in damages for his death. Wencker v. Railway, 169 Mo. 592; Barney v. Railway, 126 Mo. 372. All three of the charges of negligence in the petition, were negligent acts in connection with the managing of the locomotive, cars or train of cars, on which the plaintiff's son was riding at the time of his death. Under these allegations of negligence the plaintiff's cause of action was under section 5425, R S. 1909, and the plaintiff could only recover as a penalty, not less than $2,000 or more than $10,000. R. S. 1909, sec. 5425. McMurray v. Railway, 225 Mo. 272; Culberton v. Railway, 140 Mo. 35; Mc-

Kenna v. Railway, 54 Mo. App. 161; Crumpley v. Railway; 98 Mo. 34; Casey v. Railway, 205 Mo. 721; Schlareth v. Railway, 96 Mo. 509. The basis of the plaintiff's right to recover for the loss of her son was the value of the services of the son during his minority, if the plaintiff had been entitled to recover compensatory damages at all in this case. In failing to give the jury the proper legal elements for the computation and assessment of damages, this instruction is also erroneous, as established by an unbroken line of decisions in this state. Parsons v. Railway, 94 Mo. 286; Goss v. Railway, 50 Mo. App. 614; Wallace v. Transit Co., 123 Mo. App. 167; Jacquin v. Railway, 57 Mo. App. 335.

*Henry J. Latshaw* for respondent.

(1) The court did not err in overruling defendant's demurrer to the evidence. The deceased was not a mere licensee or volunteer but was engaged in the service of his master, where he had a right to be and where his duties to his master took him, and the defendant owed him the duty of reasonable care and protection against the negligence of its servants. Tinkle v. Railroad, 212 Mo. 470; Roddy v. Railroad, 104 Mo. 250; Young v. Oil Company, 185 Mo. 634; Fassbinder v. Railroad, 126 Mo. App. 563; Butler v. Railroad (K. C. Court of Appeals), 136 S. W. 729. The stop or jerk which threw and precipitated the deceased from the car was unusual and extraordinary and of such a character as to give rise to the presumption of negligence on the part of defendant's servants. Bartley v. Railroad, 148 Mo. 140; Hite v. Railroad, 130 Mo. 137; Pryor v. Railroad, 85 Mo. App. 379; Tinkle v. Railroad, 212 Mo. 445; Husted v. Railroad, 128 S. W. 282; Patrum v. Railroad, 129 S. W. 1041. It was shown clearly that the defendant's servants knew that the boy was on the car not only by the testimony of the defendant's fireman, but also by the plaintiff's

witness, Ward, who testified that the defendant's brakeman passed through this car just before the accident and was very close to the boy and of course either saw the boy or could have seen him. Relative to appellant's contention that it was both necessary to allege and prove the non-appointment of a personal representative in Kansas before the plaintiff could maintain her cause of action, the respondent calls the court's attention to the allegation in plaintiff's petition of the fact that no personal representative had been appointed to or for said Albert Hackler and that said Albert Hackler died intestate in the state of Kansas and the proof of that allegation by the testimony of Mrs. Catherine Hackler. (2) The court did not err in giving the instruction given on behalf of the plaintiff. Plaintiff's cause of action was not based on section 5425, R. S. 1909, which section provides for the recovery as a penalty of not less than two thousand dollars and not more than ten thousand dollars, but was based on the provisions of the Kansas statutes, which were pleaded and proven, and which we believe is a sufficient answer to appellant's contention that it was not a proper instruction by reason of section 5425, R. S. 1909. It was a proper instruction under section 419, Civil Procedure, namely section 6014, General Statutes of Kansas 1909. With reference to appellant's contention that plaintiff's instruction gave the jury no basis or element on which to base their verdict but left a free rein to give a verdict in any sum not to exceed ten thousand dollars which they might believe from the evidence would reasonably compensate plaintiff for the damages received through her son's death, respondent contends that as the appellant neglected to ask for an instruction setting out the elements constituting the measure of the damages it cannot be heard to complain that the jury were not properly directed as to the amount of the recovery. Waddell v. Railroad, 213 Mo. 8; Huf-

ford v. Railroad, 130 Mo. App. 638; Harmon v. Don-
ohue, 153 Mo. 263; Ogan v. Railroad, 142 Mo. App.
248.

ELLISON, J.—Plaintiff is the mother of a boy
who was killed in the state of Kansas by falling from
one of defendant's freight cars. Her claim is that
her son's death was the result of the negligence of
defendant's servants in switching cars. The action
is founded on the statutes of Kansas. She recovered
judgment in the circuit court.

The following statement of facts in the case is
taken substantially from that made by plaintiff: The
Boyd Construction Company had its employees en-
gaged in unloading gravel from defendant's cars
standing on a switch, and it had been so engaged for
several months prior to the 27th of August, 1910, the
day of the accident. Plaintiff testified that her boy
was thirteen years old and small for his age. It
appears that he was employed by the Boyd Company
to carry drinking water to the men unloading the cars.
He carried this from a nearby well, in a tin bucket,
the evidence tending to show that he would climb
up in the car where the men were unloading and pass
water around to them in a cup, and he had been doing
this for perhaps two months. The cars were open,
but with sides and ends four feet ten inches high. By
some arrangement a train crew in defendant's em-
ploy, together with one of defendant's engines, would
switch out cars as they were unloaded. The present
controversy has particular concern with three cars,
two had been unloaded, and one partly, out of the
center. There were some other cars also standing
with these. The deceased boy had got up in the partly
unloaded car and had handed water to the three or
four men there at work, but did not then get off the
car. About ten minutes after the water was served,
one of defendant's engines was brought in and at-

tached to the standing cars with the purpose of switching the two empty cars at the other end. This was done by what is called a "kicking or flying switch," that is to say, the cars to be separated are uncoupled, and the engine put to a considerable speed, when it will be brought to a stop and the separate cars will then run on to where they may be switched and stopped. The charge is that stopping the engine with the attached cars, the one partly unloaded being one of them, was so negligently sudden that it caused an extraordinary jerk which threw deceased over the end of the car onto the track, where he was run over and killed. If the evidence in plaintiff's behalf is to be believed, we think there was enough shown to keep the case from falling within that of Wencker v. Railway Co., 169 Mo. 592.

As before stated, the sidings of the car were four feet ten inches higher than the floor. The gravel in the end of the car came up to within eighteen inches of the top, and plaintiff's theory is, that deceased, while riding during this switching, or, at least, at about the time he was thrown out, was kneeling down, or, as expressed by plaintiff's witnesses, was standing on his knees at the end of the car, not up against the end, but near the corner about eighteen inches from the end and two feet from the side, and that when the violent jerk came it had the effect of throwing him over the end onto the track. To have stood on top of the gravel at the end of the car with nothing to hold to, while the crew were making the switch as just described, would have been negligence on the part of the deceased. [Hedrick v. Ry. Co., 195 Mo. 104; Gabriel v. Ry. Co., 135 Mo. App. 222; Hawk v. Ry. Co., 130 Mo. App. 658.] But if he was down on his knees, it was a position reasonably safe and therefore, as claimed and insisted upon by plaintiff, he was exercising all proper care to avoid falling off. This theory

161 App.—33

of plaintiff's brings up the question whether such a position in the car was not so secure that deceased could not have been thrown from it by an extraordinary jerk caused by a sudden stop.

The boy was thirteen years old, but small for his age—was only four feet and three inches tall. He was kneeling on the gravel, which, allowing for ordinary proportionate length of the leg below the knee, would make him, in that position, about thirty-five inches high. Then allowing for eighteen inches of sideboard which stood above the gravel upon which he was kneeling, we have only about seventeen inches —his head and part of his shoulders—above the car, and, so some of the witnesses stated, only his head and shoulders could be seen. In such a position he could not have been thrown over the end of the car. He could have been thrown against it, striking his neck, face or head, but there is no reason upon which to base the statement that he could be thrown over it onto the track below. Those witnesses who stated he was standing up on the gravel at the end of the car, though their statement is denied by plaintiff, must have been correct. The accident could not have happened as insisted by plaintiff.

But as the state of the evidence in the record is such that it leaves us in doubt as to whether all of the facts have been brought out as to the deceased's position, we conclude not to reverse the judgment outright, but to remand the cause for another trial.

All concur.