# F. M. SMITH, Admr., v. OZARK. WATER MILLS CO.

### Springfield Court of Appeals, March 11, 1922.

1. **DEATH:** Instruction on Damages Held Erroneous, Because Not Qualified. Under Revised Statutes 1919, section 4219, providing that in actions for death under section 4218, the jury may give such damages not exceeding $10,000 as they may deem fair, an instruction to assess an administrator's damage for the death of his intestate at a sum not more than $7500, as the jury might see proper, without further qualification, was improper and erroneous, as the jury might well think that they had a right to take into consideration elements of loss for which there can be no recovery.

2. **HIGHWAYS:** Deceased Held Negligent. Deceased stood on the Running board of automobile when he might have taken a seat, and was thrown off and in front of a truck which was approaching from the opposite direction, in an effort to avoid a collision with the truck, which had no lights, *Held*: that deceased was negligent in voluntarily placing himself in a place of danger, and that there could be no recovery against the driver of the truck, who was also negligent, as the act of deceased was a contributing and proximate cause of his death.

3. ————: Deceased Held Negligent in Not Protesting or Cautioning Driver. While negligence of the driver of the car of which deceased was riding on the running board could not be imputed to deceased, yet he was negligent in not cautioning driver or protesting against his manner of driving.

4. **HUMANITARIAN DOCTRINE:** Failure to Have Lights on Moving Truck. The fact that a truck driver is driving his truck without lights, along a highway with which he is acquainted, and knows persons approaching from the opposite direction must travel on the same side of the road on account of its condition, *held* likely to give occasion for application of the humanitarian doctrine, in case others on the highway are injured by the truck.

5. **NEGLIGENCE:** Injury, Though Not Anticipated, Actionable. One does not have to anticipate actual injury or damage which finally occurs, but will be liable for everything which, after the injury is complete, appears to have been a natural and possible consequence of his act or omission.

215 Mo. App.—9.

6. **DEATH:** Prospective Marriage of Deceased Child May be Considered. In an action for wrongful death of an adult son who has contributed to the support of parents, evidence that decedent was about to be married might be considered in assessing damages for his death, as the statute is compensatory.

Appeal from the Circuit Court of Stone County.—*Hon. Fred Stewart,* Judge.

REVERSED AND REMANDED.

*R. A. Pearson* and *Jno. L. McNatt* for appellant.

(1) The peremptory instruction asked by defendant should have been given. (a) Because under the testimony the decedent was himself contributorily negligent, in riding standing outside on the running board though repeatedly solicited to ride inside, where was ample room and security, and riding on the left or outer side of a rapidly moving car around a right curve, in the darkness, over a much traveled public highway; and without suggestion or protest at the hazard, knowing the probability of counter-traffic. J. H. Smotherman v. Railway, 29 Mo. App. 265; Carroll v. Transit Co., 107 Mo. 653; Gabriel v. Railway, 135 Mo. App. 222; Fussellman v. Railroad, 139 Mo. App. 198; Knoxville v. R. & L. Co., 178 S. W. 1120, 132 Tenn. 487, L. R. A. 1916A, 111; Smith v. City, 198 S. W. 1120 (4, 3); Leapard v. Railway, 214 S. W. 268; Wagner v. Kloster, 175 N. W. 840; Lauson v. Fond du Lac, 25 L. R. A. (N. S.) 40. (b) There is no evidence the driver ever saw decedent; it was physically impossible. Decedent was riding on the side of the car from the truck. As the lights came in line with the truck decedent was behind them, and the truck driver necessarily blinded by them. This element of knowledge under the last chance rule was not estab-

lished; and there is entire absence of evidence that the driver negligently failed to stop from the moment he heard and realized decedent beneath the truck. Abbott v. Elevated Ry. Co., 121 Mo. App. 582; Smith v. Railway, 201 S. W. 569; Branstetter v. Railroad Co., 225 S. W. 1035; Shedron v. Light Co., 223 S. W. 760. (c) The petition charges decedent was seen to be in peril. Obviously if the truck driver could have seen decedent behind the car and the lights, decedent could have seen the truck and made himself secure on the car. The element of the last chance theory, that the driver also realized the decedent was oblivious or helpless, is omitted in both petition and instructions, nor is there any evidence of it. Stark v. Bingham, 223 S. W. 946; Knapp v. Denham, 195 S. W. 1062; Albright v. Oil Co., 229 S. W. 829. (2) The evidence is not sufficiently certain or distinct on which to base the verdict, and the finding is excessive. The age and expectancy of the father was not shown, moreover decedent was living at home lodging and boarding there and no net pecuniary probable loss was shown. Decedent was to have been married in three days when, as like the interest of the parent as a minor deceased is approaching his majority, the status and obligation toward the parents ended. The recovery could only be for pecuniary losses to beneficiaries reasonably to be expected. Defendant was entitled to instruction "A" refused by the court. Bagley v. St. Louis, 268 Mo. 259, 186 S. W. 966; Dinan v. Co., 40 N. Y. S. 764; 17 C. J. 1331, sec. 202; and 1342, sec. 227; Texas Railroad Co. v. Mills, 143 S. W. 690; Smith v. Pryor, 195 Mo. App. 259, 190 S. W. 69; Gurley v. Power Co., 90 S.E. 543; Pickett v. Railroad, 117 N. W. 616, 53 Am. St. Rep. 611; Schulz v. Railway, 223 S. W. 757; Schofield v. Railway, 149 F. 601. (3) Plaintiff's instruction No. 1, concludes with direction as to allowing damages, permitting the jury to find in any amount they think proper within $7500, with no reference to the necessary injury resulting or compensatory character of the award. Despite defendant's

instruction, this was confusing and misleading. D. & R. G. R. Co., 52 Pac. 211; Philadelphia & R. R. Co. v. Adams, 33 Am. Rep. 725; Nichols v. Winfrey, 79 Mo. 551. (4) The testimony of Dr. Young, "Did he die from the effects of the wounds," was timely and expressly objected to as calling for his conclusion on the ultimate point to be decided, and invading the province of the jury. It was an issue, denied by defendant and the burden of proof being on plaintiff. Taylor v. Railroad, 185 Mo. 256; Market v. Railway Mail Assn., 226 S. W. 301; Johnson v. Trading Co., 163 S. W. 896, 178 Mo. App. 445; Roscoe v. Railway Co., 202 Mo. 594. (5) That the death resulted from the injuries is not shown. Dr. Young testified the cause was pneumonia, "an accumulation of pus due to the broken rib, or pneumonia" he did not know which. There was no attempt to show pneumonia could or did result from his injuries. Beile v. Protec. Assn., 155 Mo. App. 644.

*Moore, Barrett & Moore* for respondent.

(1) Plaintiff's petition states a cause of action, and same was properly brought by the Administrator of the Estate of Herbert D. Smith. Johnson, Adm., v. Dixie Mining Co., 171 Mo. App. 134, same case 187 S. W. 1; Smelser v. Railroad, 262 Mo. 25. (2) Appellant's fifth assignment of error cannot stand. The age of the father and mother were shown as was the younger brother and sister and life tables are only persuasive evidence, not conclusive. Bright v. Thacher, 202 Mo. App. 301, 318. (3) Appellant's Instruction "A" was properly refused for if same is the law, marriage of decedent at any time in the future would be a cloak for wrongful and unlawful acts. Authority cited above, local citation, 314 R. S. of Missouri, sec. 4217, Art. 1, Vol. 1; R. S. of Mo., sec. 4219; Vol. 1. (4) Granting that a marriage contract was in existence and that the marriage was to be had the Wednesday following the in-

jury, this court cannot say as a matter of law, that such marriage would have taken place, for ofttimes in the course of human experience, marriage does not always follow an agreement to marry and if such instruction had been given, the jury would have been allowed to deal in the probabilities of the future. (5) In the face of the father and mother's testimony that they know nothing about the day as testified to by Mrs. Morrisett, nor of any showers being given. Plaintiff's instruction 2 was in proper form as an instruction of like character has been approved. Bagly v. St. Louis, 186 S. W. 966, 967, par. 1; Troll v. Gas Light Co., 182 Mo. App. 600, 169 S. W. 337. (6) Plaintiff's instruction No. 3 was proper, under the facts shown, as the petition nor the instruction, need not submit the question of deceased being oblivious to such peril and the driver aware of such fact, as deceased was imperiled under the truck and unable to extricate himself. Knapp v. Dunham, 195 S. W. 1062, l. c. 1063, cited by appellant; 229 S. W. 829, in point; Newton v. Harvey, 202 S. W. 251. (7) The contention of appellant, as to testimony of Dr. Young and father to establish the death of deceased is answered very appropriately in the following authorities. Johnson v. Traction Co., 178 Mo. App. 452; Bragg v. Street Ry. Co., 192 Mo. 331-333. (8) As to the question of having lights burning on the truck, and keeping vigilant watch, sounding horn, etc., which stands admitted in this case was not done, convicting appellant with gross negligence that in respondent's judgment amounts to a wilful wrong, see 2 R. S., secs. 7577-7576-7585. (9) And on driving a motor vehicle, the highest degree of care is required. Bongneer v. Zeigenhein, 165 Mo. App. 328; Hodges v. Chambers, 171 Mo. App. 563. (10) In a personal injury case unless the court can say, under all the evidence that no reasonably prudent man would have done as plaintiff did, the question is for the jury. Osborne v. Wells, 211 S. W. 887, 890; Kean v. Schoening, 103 Mo. App. 77; Becker v. Kortop Jew. Co., 175 Mo. App. 279;

Aiken v. Sidney Steele Scraper Co., 197 Mo. App. 673, 676. (11) And on contributory negligence and where same is for the jury, see 259 Mo. 654; 186 Mo. App. 83-123; 187 Mo. App. 318. (12) Contributory negligence will not bar recovery under humanitarian or last-chance doctrine. Albright v. Joplin Oil Co., 229 S. W. 829. (13) Where there is a flagrant violation of law or ordinance resulting in injury contributory negligence must be clearly shown. Yonkers v. Railroad, 182 Mo. App. 558; 178 Mo. App. 718; 244 Mo. 1.

FARRINGTON, J.—The plaintiff, administrator in this case, obtained a judgment against the defendant, appellant, on account of the death of Herbert Smith, alleged to have been the result of defendant's negligence. It is alleged in the petition, and shown by the evidence that the deceased, Herbert Smith, was a young man about twenty-six years of age and lived at his father's home about a mile or so north of Ozark, Missouri. That he had contributed out of his earnings to the support of his father and mother, and was single and unmarried. He started out from Ozark one night on foot going to his home, traveling along the public road. After crossing Finley Creek, over which there is a bridge, he was overtaken by a friend driving an automobile who lived several miles beyond deceased's home on the same road. He stopped and asked the deceased to ride in the car with him but that the deceased stood on the running board and refused to take a seat in the back of the car where it was offered to him by the driver and owner of the car and by another passenger who was in the back seat. After he got on the car, the road he was traveling ran west for quite a distance where it then turned on a curve up a long hill. The evidence shows that while the road was about forty feet wide, the traveled roadway was all on the west side of the road, or the outer rim of the curve going up the hill, and that the east half of the road was not in good condition for traffic. After the

deceased took his stand on the running board or step of the automobile, he held a possum out in his left hand which he was taking home, and leaned or sat against the side of the car and held on by taking hold of what is known as the robe strap back of the front seat. The owner of the car, after he had gone west some distance and was coming to the turn in the road which leads up the hill, speeded up his car to where it was running something like thirty miles an hour. The car had lights on it and was well equipped with brakes and steering apparatus so far as appears in the record before us. In going up this hill on a turn, it is shown that the lights of an automobile going west and north, such as was the one on which the deceased was riding, would not be turned for any great distance on the road it was traveling. The curve in the road would make the light shine out to the west or left of the road. The evidence tends to show that at the time at which this took place it was dark, or at least so dark that objects could not be seen far ahead in the road. The petition charges, and the evidence conclusively shows, that the defendant was operating a truck between Springfield and Ozark, and that on this night this truck was coming down the hill which the automobile the deceased was riding on was going up, and that this truck had no lights, as required by law, in fact there was no light on it whatever. The deceased and the driver of the truck were both very familiar with the road at that place. It is further shown that the driver of this truck, who was the servant of the defendant, gave no warning by horn or otherwise that he was coming down this hill. The truck was coming down in the traveled road which was on the right hand side of the road, the same track in which the automobile the deceased was on was traveling up the hill. The evidence of the witnesses shows, without question, that no one in the automobile on which the deceased was riding saw or could see the defendant's truck until it had gotten very close to it—some of the witnesses put it at about ten

feet. The driver of the car on which the deceased was riding, and who was a witness for the plaintiff, gives this version:

"Right on the turn there of this hill we met a truck and there is where the boy was thrown off. We was going this way and my lights was on ahead of us this way. When I turned to make the turn on the hill this truck was right here. I don't know how far from me when I first saw it. It was awful close to me. It looked to be right at me. It was close enough to me that when I cut the car this way (indicating) it looked like it knocked him down the road. I wouldn't say that was what happened. When I cut the car was when I saw him leave. I looked back that way and I cut the car as quick as I could. I don't know how far I missed the truck, it was pretty close. We wasn't very far apart. The truck had no headlights. There was a couple of dash lights up on the dash. It had no lights burning at all. I heard no sound of warning of any kind. I knew nothing about it until I swung my car and my lights were turned on it, when I made the turn around why the truck was there in the road. After I turned the car, the boy that was in the car with me he got out before I could get my car dead still."

He further says:

"When I heard him speak I just set down, backed down and turned the car. The boys put him in the car and we taken him into town and to the doctor. I don't know how far the truck run after I turned the car. I judge it wasn't much over two lengths of the truck."

Another witness for the plaintiff, who was riding inside of the car on which the deceased was riding, gave this version:

"Mr. Estes was driving on the left hand side of the road, that took him out toward the rim of the curve. He was traveling, I judge, about twenty-five miles an hour. I never saw the truck until he fell off the car. I saw him fall right in front of the truck. I didn't know what he

was doing until he did.   When he turned the car it throwed me over.   It looked to me Estes was about ten feet from the truck when he started to turn, just right against us, he was going at about that rate of speed, he missed the truck.   Smith fell off the car in under the truck, he hit right in front of the truck.   The truck was still moving."

The petition charges negligence in a failure to have lights burning on the truck and failing to sound any alarm or warning, by driving negligently around this curve without keeping a vigilant watch, and then attempts to plead a failure of duty under the humanitarian rule.   The answer of defendant is a general denial, coupled with a plea of contributory negligence.

The assignments of error are, first, that the instruction asked by the defendant in the nature of a demurrer to the evidence should have been sustained; first, because of the contributory negligence of the deceased, and, second, because under the last chance doctrine it shows the truck driver did not and could not see or know of deceased's peril before the driver of the truck did stop. Assignments are also made concerning the giving and refusal of instructions.

We will take up first the assignment as to plaintiff's principal instruction, because it contains manifest error and will require that this judgment be reversed.   The last lines of this instruction inform the jury if they find the issues for the plaintiff, they will "assess the damage at whatever sum you may deem proper not to exceed the sum of seven thousand five hundred dollars." We just held in the case of Wilbur Stookey, a minor, by his Next Friend, Carrie M. Stookey, v. St. Louis-San Francisco Railway Co., 215 Mo. App. 411, that an instruction fixing the damage, in practically the same words as the one in the case at bar, was erroneous, citing therein the cases of Johnson v. Mining Co., 171 Mo. App. 134, 156 S. W. 33; McGowan v. St. Louis Ore & Steele Co., 109 Mo. l. c. 537, 19 S. W. 199.

Actions brought under sections 4218 and 4219, Revised Statutes 1919, for pecuniary loss are wholly compensatory, and instructions on the measure of damages must contain a guide with reference to the necessary loss.

If there can be any recovery whatever in this case it must be based on the humanitarian doctrine, because the action of the deceased in standing on the running board of an automobile which was traveling up a dark road, on which the lights of the machine on which he was traveling could not, owing to the curve in the road, shine and throw light, traveling at a rate of twenty-five to thirty miles an hour and being on the outside or curve side of the road, and on the wrong side, when there was a seat in the automobile where passengers riding in automobiles are supposed to be, and which had been offered to him, is an act of negligence concerning which reasonable men could not have a difference of opinion. The law is well settled that where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having taken the dangerous position he is injured, he can have no recovery against another who is also negligent because such person's negligence in taking the dangerous position is one of the direct and proximate causes of the injury and contributes thereto. In such cases it becomes the duty of the court to direct a verdict. [See Smotherman v. Railroad, 29 Mo. App. 265; Carroll v. Transit Co., 107 Mo. 653, 17 S. W. 889; Gabriel v. Railroad, 135 Mo. App. 222, 115 S. W. 3; Fussellman v. Railroad, 139 Mo. App. 198, 122 S. W. 1137; Williams v. Storage Co., 214 S. W. 385; Woodson v. Street Railway Co., 224 Mo. 685, 123 S. W. 820; Collett v. Kuhlman, 243 Mo. l. c. 591, 147 S. W. 965; Nivert v. Wabash R. R. Co., 232 Mo. l. c. 643, 135 S. W. 33.]

The case of Wheeler v. Wall, 157 Mo. App. 38, 137 S. W. 63, is an automobile collision case wherein the facts are somewhat similar to the case here so far as a

failure to have lights and speed of the car are con-
cerned.   The plaintiff there was denied recovery on
account of contributory negligence.

We, therefore, must hold that the deceased's act
in riding on the running board of the automobile at the
speed it was going and under the surrounding conditions,
was an act of negligence.   There is another reason for
holding him guilty of negligence, which is that while
the negligence of the driver of the car he was riding on
cannot be imputed to him, yet all the evidence shows
that he rode where he did without any word of protest
or caution on his part to the driver of the car.   This,
under the law laid down in Burton v. Pryor, 198 S. W.
1117, made his unprotested acquiescence in the negli-
gent act of the driver his negligence.

Attorneys for respondent doubtless realized that
the act of Herbert Smith was a negligent one, and re-
covery is sought in the petition under the humanitarian
doctrine.   The theory of applying this doctrine to this
case as it was tried was to make the driver of the truck
guilty of negligence for not stopping after the deceased
was thrown off the car and in front of the truck.   We
have set out the evidence of the eye witness to the trag-
edy heretofore which shows beyond question that as
the car upon which the deceased was riding suddenly
swerved to the right to avoid a collision, the deceased
was thrown off of the running board right in front or
under the truck.   The evidence further shows that the
truck, at the time he was thrown off, was moving down
the hill, and the weight of the same was about 3500
pounds.   It is not shown that the driver of the truck
ever saw the deceased fall off of the running board
right in front or under his truck, and the physical facts
would strongly indicate that the lights of the car on
which the deceased was riding, he being behind them,
would make it impossible for the driver of the truck
to have seen him fall.   And as the truck was stopped,
under the testimony, within two truck lengths from where

the car on which the deceased was riding turned out in front of it, there is not time enough, in such an emergency, to hold that the truck driver could have done anything other than he did after the deceased was thrown in front of or under the front of this loaded truck.

We are, however, of the opinion that there is evidence in the record upon which a recovery might be had under the humanitarian doctrine, and that is on the following theory: There is some testimony in the record that from the top of the hill and on the way down the hill, as the truck was coming, the lights of a car coming toward him could have been seen a long way off, in fact clear on down to the bridge which crosses Finley Creek, some 300 or 400 yards away. If this is true, then the driver of the truck knew his lights were out, and knew that those using the road who would meet him would be in the same track that he was traveling also knew that his presence in the road would not be discovered by reason of the lights which were on the oncoming car until it was practically on him, so close indeed that a collision or an accident was almost inevitable. As a reasonable man, he must have known that his failure to have lights on his heavy truck would make those in the oncoming car entirely oblivious to his presence in the road and to their peril in meeting him. If he could see this car coming, or the lights coming, he could judge somewhat of the speed that it was traveling, and a duty then fell on him to take such steps as a reasonably prudent man would have taken to have warned the oncoming car that his truck stood there as a menace in their path; and this even though they were on the wrong side of the road and his truck was on the right side of the road. He would be held to a knowledge of the fact that the car approaching him was in peril and that those operating it would likely remain oblivious to their peril until it was too late to avoid some sort of accident.

To say that he did not know that the deceased was riding on the running board is no excuse for his failure

to take all steps that were necessary to protect those who were in or on the oncoming car. Under the long line of decisions in this State one does not have to antici- pate the actual injury or damage which finally does take place, but he will be held liable for everything which, after the injury is complete, appears to have been a nat- ural and possible consequence of his act or omission. [See Hudson v. Union Elec. Light & Power Co., 254 S. W. 869, l. c. 871; Deneschocky v. Sieble, 195 Mo. App. l. c. 479, 193 S. W. 966; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 710, 120 S. W. 766.]

Assuming that on a retrial there will be testimony showing that he could, by the exercise of ordinary care, have discovered the peril the car approaching him was in, occasioned by his failure to have lights, and assum- ing that it be true that he gave no sound of warning, did not stop his truck, or get out and run forward and warn them of the presence of his unlighted truck, or in fact do anything other than proceed down the pathway that he knew they were coming on, makes a question of fact to be determined by a jury, as to whether he acted, under those circumstances, as a reasonably prudent person would have acted—whether he had the means at hand to have avoided injuring the deceased after he knew or should have known that he was in peril and oblivious to it. This, we think makes evidence which would sustain a judgment under the humanitarian rule, and if on a re- trial the respondent sees fit to draft his petition along this line he should eliminate the cause for criticism of the petition as it now stands, made by the appellant and citing as a ground for such criticism Stark v. Bingham, 223 S. W. 946; Knapp v. Denham, 195 S. W. 1062; Al- bright v. Oil Co., 229 S. W. 829.

There was some evidence introduced by the defend- ant that the deceased was to have been married a few days after the day on which his injury occurred, it being that the deceased was to be married to the truck driver's daughter. There is also testimony from which it could

be inferred that this marriage would not have taken place, that is to say, the mother and father, with whom he was living and supporting, testified that they did not hear of this proposed marriage until after his injury. The jury could consider this evidence along with the common knowledge of all that "there is many a slip betwixt the cup and the lip," in arriving at the amount to be allowed. This, like the possibility of the dependents dying, the possibility of the supporter dying or stopping his contributions, is to be taken into consideration by the jury. We, therefore, think that defendant's instruction No. A, touching this phase of the case, should have been given.

It is unnecessary to discuss other errors complained of, as they will doubtless be eliminated on a retrial.

For the reasons given, the judgment is reversed and the cause remanded. *Cox, P. J.*, and *Bradley, J.*, concur.