WILLIAM LEROY GERBER, by His Next Friend, WILLIAM L. GERBER, Appellant, v. CITY OF KANSAS CITY, UNITED STATES FIDELITY & GUARANTY COMPANY, and J. L. CROSS.

WILLIAM LEROY GERBER, by His Next Friend, WILLIAM L. GERBER, v. W. D. BOYLE CONSTRUCTION COMPANY, Plaintiff in Error.

Division One, June 10, 1924.

1. **NEGLIGENCE: Inference from Facts.** Negligence is not a fact subject to direct proof, but an inference from facts; and plaintiff is entitled to have all evidence in his favor tending to establish

actionable negligence taken as true, and to every reasonable inference to be drawn therefrom.

2. ———: ———: **Explosives: Accessible to Children: Negligent Placement.** The danger involved in leaving a dynamite cap attached to a fuse, explosive under slight concussion, accessible to small boys is manifest, and the question whether it was so left by defendant is to be inferred by the jury from the facts of the particular case where there is substantial evidence from which such inference may be reasonably drawn.

3. ———: ———: ———: **Construction of Sewer: Dynamite Caps: Left by Contractor.** A ditch for a sewer was being dug between the sidewalk and curb by the defendant construction company under contract with the city. The earth was removed to a depth of five feet, and piled along and on the sidewalk in front of the house where the twelve-year-old plaintiff lived with his father, and below this a number of holes were drilled in the rock, in which were placed sticks of dynamite and fuses and caps, and exploded. The excavation and blasting had been done in November and December, and in the latter part of December the work was suspended on account of freezing weather and was not renewed until after plaintiff's injury. A driveway ran along the edge of the lot on which was located the house and crossed the sidewalk. Immediately adjoining the driveway was a pile of earth, dug from the ditch, two and a half feet high, and in it was a fuse, to which was attached a dynamite cap. The fuse was about the size of a pencil, had somewhat the appearance of a piece of rope or cord, was about fifteen inches long, and about half of it was sticking out of the pile of loose earth and broken rock, and the cap was on the exposed end. On February 11th plaintiff, playing with a little wagon, coasted down the driveway. The guiding handle of his wagon had become loose, and he pulled the fuse out of the pile for the purpose of using it to tie the handle. The cap interfered with his purpose and he undertook to remove it with his pocket knife. An explosion resulted, and he was injured. Plaintiff's father testified that the fuse had been sticking in the excavated pile of dirt for two months prior to his child's injury, but thought it was a fuse that had been used, like hundreds of others he had seen on the piles of excavated earth, and that he did not know that it was loaded or harmful, and said nothing about it to any one. There was testimony that blasting had been going on in two quarries several blocks distant, and also that blasting had been done on other city work in the same neighborhood, and that only one stick of dynamite was used for each hole; that the caps were always crimped before being used, and that the cap which injured plaintiff was not crimped, but that

it was the same make and kind of cap used by defendant construction company. *Held*, that the main issue of fact, namely, whether this cap with its fuse attached was left in the pile of earth by said defendant, was a question which, under these and other facts in evidence, was properly submitted to the jury, since from them reasonable men might draw different inferences.

4. **ARGUMENT TO JURY**: Inference from Submission of Case to Jury. Where defendant's attorney in his argument to the jury had stated that "there is not a bit of affirmative evidence" to sustain the main issue in the case, remarks by plaintiff's attorney in his closing argument that the court would not have submitted the case to the jury "if there wasn't sufficient evidence upon which to submit that question" were susceptible of a construction unfair to appealing defendant; but where the court immediately instructed the jury that he had "not undertaken to instruct you how you shall construe the evidence," and in the written instructions pointedly conditioned their right to return a verdict for plaintiff upon a finding from the evidence of said issue in his favor, the remarks do not justify a setting aside of the verdict.

5. **NEGLIGENCE**: Construction Contract: Injury to Third Party: Liability of Sureties. The liability of sureties for the negligent acts of the principal who has contracted with the city to construct a public sewer depends upon the contract, the whole of which must be considered, and the intention of the parties ascertained from all its provisions considered together. Provisions in the contract and bond that the contractor in constructing the sewer should use every precaution to prevent injury to railway companies, their tracks, employees and passengers and "shall assume all liability for damages accruing from any accident which may be due to his carelessness, omission or neglect" and "any injury resulting to persons or private or public property from the negligence or misconduct on the part of the contractor, his agents, servants or employees in the prosecution of the work under his contract must be repaired by the contractor and his bondsmen" do not authorize a little child, who was injured by the explosion of a dynamite fuse and cap which the contractors had negligently left upon the excavated embankment, to sue the contractor's sureties for damages, since they point out the classes of persons who may sue the sureties and do not include third parties as among those classes, and the terms of the contract are not aided or broadened by statute.

6. ———: ———: ———: Blasting: Unexploded Cap: Liability of City: Independent Contractor. Where the contract between the city

and contractor for the construction of a sewer was in writing, and specifically provided that "the contractor is in all respects an independent contractor as to such work, notwithstanding in certain respects the contractor is bound to follow the directions of the city engineer" and that "only such character of explosives are to be used as are permitted by the city engineer," the city is not liable under the contract for personal injury to a small boy who, at play with his little wagon, took from the pile of earth and rock which had been excavated from the sewer trench a piece of fuse to which was attached an unexploded dynamite cap, for the purpose of using it to tie up the handle of the wagon, and in removing the cap with his knife caused it to explode. [Following Salmon v. Kansas City, 241 Mo. 14.]

7. ———: Blasting: Inherent Danger: Dynamite: Liability of City. The use of dynamite in blasting rock out of the trench in which a sewer is to be laid is not unlawful, and in view of precautions inserted in the contract requiring the independent contractor "to take any and all other proper precautions to guard against damages or injury to person or property," the use of dynamite in blasting the rock, with the knowledge of the city, was not necessarily, nor so palpably, dangerous as to constitute a thing inherently dangerous, in such sense as to render the city liable for injuries to a small boy who took from a pile of the excavated dirt an unexploded fuse and was injured when he attempted with his knife to remove the cap therefrom.

8. ———: ———: ———: ———: ———: Injury Occurring Outside Scope of Contract. The injury to the small boy, who took, from a pile of earth that had been excavated from the trench in which a sewer was to be laid, a piece of fuse to which was attached an unexploded dynamite cap, did not occur while the work of excavation was going on, but several weeks later, and after work on the sewer construction had been suspended on account of freezing weather. It did not result from the act of performance of the independent contractor of his contract with the city, but resulted from his failure to discover the unexploded cap, if it was one which he had attempted to use in blasting, or from his negligent leaving of it, without an attempted use, at a place accessible to such children. Held, that, the injury resulted from an act of the contractor collateral to the performance of the work itself, and the rule prohibiting the city from permitting the use of an explosive inherently dangerous does not apply.

9. ———: Liability of City: Irresponsibility of Contractor: Collateral Issue: Rejected Evidence. Where the petition alleged that the construction company, a defendant, was reckless and habitually per-

formed its work in an unsafe manner and was insolvent and irresponsible, and that these facts were known to the defendant city at the time it entered into the contract with the company to construct the sewer, and plaintiff introduced the city engineer who testified that during the preceding twenty-six months, which embraced the time when the plaintiff took from a pile of excavated earth a dynamite fuse and cap which exploded in his hand, the company had had no accident, the rejection of further evidence offered by plaintiff that the company had been organized in recent years, that its president and manager had been associated in prior contracting companies, that every time one of said companies had an accident they organized another company under their control, and that said prior companies had had numerous blasting accidents, was not error, since the offer raised issues collateral and remote from the issues made by the pleadings, and did not go to sustain the charge that said defendant was insolvent and irresponsible.

10. ——: ——: Excavation of Sewer: Obstruction of Sidewalk: Notice to City: Injury to Traveler. The city is liable for injuries to travelers caused by dangers connected with the obstruction of its sidewalks which are obvious or of such a character that the law imputes to it knowledge thereof. The city contracted with a construction company to construct a district sewer for three blocks along a certain street. In excavating the trench to the required depth, it was necessary to use quantities of explosives to blast the rock, and sticks of dynamite, to which were attached fuses and explosive caps, were inserted in holes drilled into the rock, and exploded. The work began in the middle of November and continued through December, and was then suspended, on account of freezing weather, through January and February. The ditch was dug in the space between the sidewalk and curb, and the excavated earth was piled on the inner side of this space and on the sidewalk, and at a driveway which crossed the walk the pile was two and a half feet high. On February 11th plaintiff, a boy twelve years of age, playing with his little wagon, coasted down the driveway. The guiding handle of his wagon becoming loose, he found in the pile of earth on the sidewalk, and about a foot from the building line, a fuse about fifteen inches long. About one-half of it protruded above the surface of the pile, and on the upper or outer end was an unexploded dynamite cap. The fuse was about the size of a pencil, appeared to be a cord, and desiring to tie up the handle of his wagon, plaintiff pulled it out of the pile of earth in which it was sticking, and used his pocket knife to remove the cap, which exploded, and he was injured. The presence of the fuse in the pile was not actually known to the city or its servants, but it had been negligently

304 Mo. Sup.—11

left there by the contractor or his servants, and it was in that part of the pile between the sidewalk proper and the building line, but many fuses had been used in the excavation at this place, and there was evidence that three unexploded fuses had been found adjacent to the street, and the particular one which injured plaintiff had remained exposed to view, one-half its length protruding from the pile, for nearly two months. *Held*, that, the city, having entered into a contract which contemplated the use by the contractor of the dangerous explosives, must be charged with knowledge of their dangerous character, and with notice of the probability that, through inadvertence or failure to explode, one or more of the fuses might be left along or near the street, and arising out of its continuing duty to keep its streets reasonably safe for the use of the public, including children, was the duty to use ordinary care to see to it that none of the unexploded fuses and caps were left in the street, and this duty was not shifted nor discharged by the engagement of an independent contractor to construct the sewer, and the trial court erred in sustaining the city's demurrer to plaintiff's case.

Headnote 1: Negligence, 29 Cyc. 622; Appeal and Error, 4 C. J. sec. 2709. Headnotes 2 and 3: Explosives, 25 C. J. secs. 11, 46. Headnote 4: Trial, 38 Cyc. 1506; Appeal and Error, 4 C. J. sec. 2938. Headnotes 5 to 8: Municipal Corporations: 5, 28 Cyc. 1042 (1926 Anno); 6, 28 Cyc. 1280, 1281; 7, 28 Cyc. 1282; 8, 28 Cyc. 1283. Headnote 9: Evidence, 22 C. J. sec. 89. Headnote 10: Municipal Corporations, 28 Cyc. 1284, 1353, 1388.

Appeal in first case from, and Writ of Error in the second to, Jackson Circuit Court.—*Hon. Samuel A. Drew*, Judge.

JUDGMENT AGAINST CONTRACTOR AND IN FAVOR OF HIS SURETIES AFFIRMED.

JUDGMENT IN FAVOR OF CITY REVERSED AND CAUSE REMANDED

*McCune, Caldwell & Downing* for plaintiff in error.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to plaintiff's evidence requested by defendant W. D. Boyle Construction Company at the close of plaintiff's case and again in refusing to give said defendant's peremptory instruction at the close of all the evidence. Purcell v. Tennent Shoe Company, 187 Mo. 276; Furber v. Bolt & Nut Co., 185

Mo. 301; Coin v. Lounge Co., 222 Mo. 488; Warner v. Ry. Co., 178 Mo. 125; Knorpp v. Wagner, 195 Mo. 637; John v. Birmingham Realty Co., 172 Ala. 603; Travell v. Bannerman, 174 N. Y. 47; Gralka v. Worth Bros. Co., 245 Pa. 467; Chesapeake & Ohio Ry. Co. v. Rogers, 237 S. W. 18. (2)   The court erred in failing to discharge the jury as requested by defendant and also in failing to reprimand counsel for plaintiff and to properly instruct the jury because of improper and highly prejudicial remarks made by said counsel in his closing argument to the jury.   Neff v. City of Cameron, 213 Mo. 350, 18 L. R. A. (N. S.) 320, 127 Am. St. 306; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; State ex rel. v. Claudius, 1 Mo. App. 551; O'Hara v. Lamb Construction Co., 197 S. W. 163; Junge v. Pehl, 240 S. W. 278; Jackson v. Ry. Co., 206 S. W. 244; McDonald & Co. v. Cash & Hainds, 45 Mo. App. 66; Levels v. Railroad, 196 Mo. 606.

*Atwood, Wickersham, Hill, Levis & Chilcott* for William Leroy Gerber.

(1)   The defendant owed to plaintiff the non-delegable primary duty of keeping its sidewalks and the space between the sidewalks and the property line reasonably safe for the use of plaintiff and other members of the public.   This inherently dangerous explosive, fuse and cap had lain in the pile of dirt and exposed for more than two months prior to the injury.   As a matter of law, such a length of time charged defendant with notice of the condition, and entitled plaintiff to a submission of defendant city's negligence to the jury, and the sustaining of the demurrer was error.   Bassett v. St. Joseph, 53 Mo. 290; Welsh v. City of St. Louis, 73 Mo. 71; Wiggin v. St. Louis, 135 Mo. 558; Straub v. City of St. Louis, 175 Mo. 413; Coffey v. City of Carthage, 186 Mo. 573; Benton v. St. Louis, 217 Mo. 687, 1. c. 693, 700; Capp v. St. Louis, 251 Mo. 345; Holman v. Clark, 272 Mo. 266; Hunt v. St. Louis, 135 Mo. 558; Straub v. City of St. Louis, 175 489; Ray v. Poplar Bluff, 70 Mo. App. 252; Fockler v.

Kansas City, 94 Mo. App. 464; Schlinski v. St. Joseph, 170 Mo. App. 380, 387; Hutchinson v. Mullins, 189 Mo. App. 438; Miller v. St. Louis, 187 S. W. 46; Shippey v. Kansas City, 254 Mo. 1; Davis v. Wenatchee, 149 Pac. 337; City of Victor v. Smilanich, 131 Pac. 392; City of Chicago v. Murdock, 113 Ill. App. 656; Mathis v. Granger Brick & Tile Co., 149 Pac. (Wash.) 6; Market v. St. Louis, 56 Mo. 189; Brown v. City of St. John, 187 Mich. 641. (2) The fact that the boy pulled the fuse from that part of the pile of dirt which lay between the side-walk proper and the property line is immaterial, because it was the duty of defendant city to keep the part of the street between the sidewalk and the property line free from this dangerous agency. Coffey v. City of Carthage, 186 Mo. 573; Miller v. St. Louis, 187 S. W. 45; Fochler v. Kansas City, 94 Mo. App. 464; Benton v. St. Louis, 217 Mo. 687. (3) Defendant city cannot escape liability on the ground of the work being done on the sewer ditch by a so-called independent contractor because: First, the city maintained supervision and control over the work and every detail as regards the mode, manner and method of doing the work; second, the use of high explosives in the blasting process of putting in the sewer was in-herently highly dangerous, and being so the city can-not escape liability to the plaintiff and public by shifting the blame to an independent contractor. Morgan v. Bowman, 22 Mo. 538; Larson v. Metropolitan, 110 Mo. 234; Brannoch v. Elmore, 114 Mo. 55; Gayle v. Mo. Foundry Co., 177 Mo. 427; Speed v. Railroad, 71 Mo. 303; Loth v. Theater, 197 Mo. 328; Benton v. St. Louis, 217 Mo. 687; Jewell v. Nut & Bolt Co., 231 Mo. 176; Perry v. Ford, 17 Mo. App. 212; Scott v. Springfield, 81 Mo. App. 312; Mullich v. Brocker, 119 Mo. App. 332; Gray v. Coal & Coke Co., 175 Mo. App. 421; Johnson v. Thresh-ing M. Co., 193 Mo. App. 198; Taylor v. Walsh, 193 Mo. App. 516; Pruitt v. Jewett, 225 S. W. 127; Gasden v. Craft Co., 20 A. L. R. 662; Davis v. Wenatchee, 149 Pac. 337; City of Victor v. Smilanich, 131 Pac. 392; City of Chicago v. Murdock, 113 Ill. App. 656; Mathis v. Gran-

ger Brick & Tile Co., 149 Pac. (Wash) 6.   (4)   The court erred in directing a verdict in favor of the United States Fidelity & Guaranty Company and J. L. Cross, because under the terms of the bond furnished the city the plaintiff had a right to recover in this action against the bonding company.   City of St. Louis v. Von Phul, 133 Mo. 561; Dever v. Howard, 144 Mo. 671; St. Louis v. Contracting Co., 202 Mo. 451; Kansas City to use v. Youman, 213 Mo. 151; School District v. Biggs, 147 Mo. App. 177; Moore v. Light Co., 163 Mo. App. 266; Lumber Co. v. Schwartz, 163 Mo. App. 659; Carson v. Blodgett, 189 Mo. App. 120; Fellows v. Kreutz, 189 Mo. App. 547; Hilton v. Construction Co., 202 Mo. App. 680; School District v. Liability Co., 234 S. W. 1017.   (5) The court erred in refusing to admit testimony offered on behalf of plaintiff as to the insolvency and irresponsibility of the Boyle Construction Company.   Lehigh Valley Coal Co. v. Yensavage, 218 Fed. 547 (Certiorari Denied, 235 U. S. 705); Copper Co. v. Crenshaw, 184 Pac. 996; Wallace v. Sou. Oil Co., 40 S. W. 399; Fehrenbacher v. Mining Co., 117 Pac. 870; Keech v. Lumber Co., 82 S. E. 836; Corrigan v. Huebler, 167 S. W. 159; Nelson v. American Cement P. Co., 84 Kan. 797.   (6)   While the judgment against the Boyle Construction Company may be an empty victory for plaintiff because of the absence of *supersedeas* bond, still we assert that no error was committed in the trial as to the Boyle Construction Company, and the judgment against it should be affirmed. Soeder v. Ry. Co., 100 Mo. 673; Settle v. Railway, 127 Mo. 336; Benton v. St. Louis, 217 Mo. 687; Fritz v. Railroad, 243 Mo. 62; Capp v. St. Louis, 251 Mo. 345; Yongue v. Railroad Co., 133 Mo. App. 141; Hardwick v. Wabash, 181 Mo. App. 156; Elevator v. Hines, 243 S. W. 140; Holt v. Railroad Co., 245 S. W. 1054; Choctaw v. McDade, 191 U. S. 64, 48 L. Ed. 96.   (7)   The trial court committed no error in its ruling upon the exception taken by defendant's counsel to closing argument of one of plaintiff's counsel.   Norris v. Ry. Co., 239 Mo. 695, 721; Dutcher v. Railroad, 241 Mo. 137, 177; Ostertag v. Rail-

road Co., 261 Mo. 457, 479; Beall v. Rys., 228 S. W. 834, l. c. 837; Crockett v. Rys., 243 S. W. 907.

*John B. Pew* and *Ilus M. Lee* for Kansas City.

(1) Under the provisions of the written contract the construction company was an independent contractor, and, on the facts presented in this record, there can be no liability against the city, and the court did not err in sustaining the demurrer offered by the city. Blumb v. City of Kansas, 84 Mo. 112; Salmon v. Kansas City, 241 Mo. 14; Ege v. Brick & Construction Co., 118 Mo. App. 630; Jackson v. Butler, 249 Mo. 342; McGrath v. St. Louis, 215 Mo. 191; Crenshaw v. Ullman, 113 Mo. 633; 1 Sherman & Redfield (6 Ed.) sec. 166; 14 R. C. L., sec. 16, p. 78; Marion Shoe Co. v. Eppley, 181 Ind. 219; Prest-O-Lite Co. v. Skeel, 182 Ind. 593; Foster v. City of Chicago, 197 Ill. 264; Pace v. Appanoose County, 168 N. W. (Iowa) 916. (2) Even though the evidence warranted the jury in finding that the fuse was at the place where plaintiff found it, through some negligent act of the construction company's employees, such negligent act would be wholly collateral to the contract work and could not, therefore, be chargeable to the city. Holman v. Clark, 272 Mo. 266; Salmon v. Kansas City, 241 Mo. 14, 42; McNamara v. City of New York, 129 N. Y. Supp. 230; Hanrahan v. Baltimore City, 114 Md. 517; Wilton v. Spokane, 132 Pac. (Wash.) 404. (3) The sewer ditch occupied the space between the sidewalk and curb. Dirt taken therefrom was piled on both sides of the ditch in such quantities as to make any use of the sidewalk (or adjacent roadway portion of the street) by pedestrians impossible. Plaintiff was not so using the sidewalk, and it therefore follows that the rule of law, requiring a city to exercise reasonable care to keep its sidewalks in a reasonably safe condition for travel, does not apply.

*Ball & Ryland* for United States Fidelity & Guaranty Company and J. L. Cross.

(1)   There is no privity of relation between the plaintiff and the sureties; and the plaintiff can maintain no action in any event against these sureties.   Kansas City ex rel. Blumb v. O'Connell, 99 Mo. 357; Howsman v. Trenton Water Co., 119 Mo. 314; Kansas City Sewer Pipe Co. v. Thompson, 120 Mo. 218; Lewis v. Land Co., 124 Mo. 685; State v. Railroad, 125 Mo. 617; St. Louis v. Von Phul, 133 Mo. 573; Devers v. Howard, 144 Mo. 678; St. Louis v. Wright Construction Co., 202 Mo. 451, 464; Redditt v. Wall, 55 So. 45; Moss v. Rowlett, 112 Ky. 121; Taylor v. Dunn, 80 Tex. 673.   (2)   The city is not liable in this case.   Carey v. Kansas City, 187 Mo. 715; McGrath v. St. Louis, 215 Mo. 191; Salmon v. Kansas City, 241 Mo. 14; 4 Dillon on Municipal Corporations (5 Ed.) sec. 1723; 6 McQuillin on Municipal Corporations (1913 Ed.) secs. 2262-2264, 37 C. C. A. 924; Sappington v. Centralia, 162 Mo. App. 418; Von Lengerke v. City of New York, 134 N. Y. Supp. 832; Froelich v. City of New York, 199 N. Y. 499; Prowell v. Waterloo, 144 Iowa, 689; Hanrahan v. Baltimore, 114 Md. 517, 532; Potter v. Spokane, 163 Wash. 267; Frost v. City of Topeka, 173 Kan. 293.

LINDSAY, C.—The proceeding here upon appeal and the proceeding upon writ of error arise out of the judgment, diverse in effect, rendered by the circuit court in the suit of William Leroy Gerber, by his next friend as plaintiff, and against W. D. Boyle Construction Company, Kansas City, United States Fidelity & Guaranty Company and J. L. Cross, as defendants, to recover damages for injuries sustained by plaintiff, and alleged to have been caused by the negligence of the Construction Company and its employees, and also by the negligence of the city.

The Boyle Construction Company contracted with Kansas City to construct a district sewer along a portion of Prospect Avenue in Kansas City.   On the 7th day of October, 1919, an instrument constituting a contract and

bond for the construction of the sewer was executed by the Construction Company, as party of the first part, by the Fidelity Company and J. L. Cross as sureties, parties of the second part, and by Kansas City, party of the third part.

On the 11th day of February, 1920, the plaintiff, then about twelve years of age, and residing with his father at 5611 Prospect Avenue, picked up a fuse with an explosive cap attached, of the kind used by the Construction Company in blasting, and found by the boy in and upon the dirt thrown out from the excavation made for the sewer, and near the front of his place of residence. In handling this fuse for his own purposes he caused the cap to explode, whereby he was severely injured, and the suit followed. Upon the trial the court, under the pleadings and the evidence, directed a verdict for the city, and also for the sureties. From the judgment rendered upon the verdict so returned the plaintiff has appealed. A verdict was returned for plaintiff against the Construction Company in the sum of $10,000, and from the judgment thereon the Construction Company prosecutes its writ of error. The proceedings have been consolidated for hearing and determination.

The petition alleges that the contract or bond was executed "for the use and benefit of Kansas City and plaintiff and all persons sustaining injuries and damage resulting from and through negligence and carelessness in the performance of said undertaking," and that thereby "said defendant Construction Company and said defendant J. L. Cross and said defendant Surety Company, did undertake and bound themselves to pay all damages accruing to plaintiff or any other persons for personal injuries or damage to property occurring from said undertaking or from negligence in performing said work." It sets out certain provisions of the contract relied upon, which, with some others, will be noticed further on.

The petition alleges that pursuant to said employment and to the contract or bond, the "defendant Kansas City, by and through its servant and agent, said defendant Construction Company, and the Construction Com-

pany, pursuant to said employment," proceeded to do the work, and in excavating used large quantities of fuses, caps and explosive agencies, and negligently allowed large quantities of these to be and remain in the street, about the place of work, and thereby rendered said street dangerous and highly unsafe to children and other persons; that the district along the street was thickly populated, and many children, including plaintiff, were accustomed to play about said street and place of work, and that the leaving of said explosive agencies in the manner alleged was a private and public nuisance. It charges that the "presence of the dangerous explosives and said fuse and cap and the dangerous condition of the same and of said street existed at said time and long enough prior thereto for defendants, and each of them, by the exercise of ordinary care, to have known of all of said facts, and to have, by the exercise of ordinary care, removed said danger and made said street reasonably safe before said injury, but defendants negligently and carelessly, and with joint negligence and carelessness and in violation of their legal duties and obligations herein set out, wholly failed and omitted so to do."

It charges that the defendant Construction Company was an insolvent and irresponsible corporation, "of habitually reckless habits in performing its work and wholly incompetent to do said work with reasonable safety to the public," and that the defendant city at the time of making the contract and throughout its performance so knew, or, by the exercise of ordinary care could have known. It charges that the city maintained supervision over the manner of doing the work, and in regard to the safety of the public, and supervision over the manner of handling said explosive agencies used in blasting, a character of work alleged to have been "attended with great danger to others and to the public;" alleged plaintiff's inexperience and ignorance of the dangerous character of the fuse and cap found by him, and that his injuries resulted from the negligent acts and omissions of defendants Construction Company and Kansas City, their servants and agents, and

that they and defendant sureties are jointly liable for the same. The answer of the Construction Company was a general denial, as was the answer of the sureties. The city pleaded the contributory negligence of plaintiff, in addition to its general denial.

Under the plaintiff's case as presented the several defendants sustain different relations, and the contentions made require consideration appropriate to the several relations sustained, but, since the Construction Company is the agency most directly involved, and since also the Construction Company is earnestly insisting here that its peremptory instruction in the nature of a demurrer to the evidence should have been given, a review of the evidence bearing directly on the manner in which plaintiff was injured is required.

Work on the sewer was begun about the middle of November, 1919, and continued until the latter part of December, 1919, when the work was suspended on account of freezing weather, and remained so until after the time plaintiff was injured. Prospect Avenue runs north and south, and the sewer extended from a point north of 56th Street south to 59th Street. The ditch or excavation was along the east side of the street, in the space between the sidewalk and the curb. The plaintiff's father lived on the east side of the street, and a driveway extended along the south side of the residence to the street. At the time plaintiff was injured the open sewer ditch and the embankments of dirt on either side extended along immediately in front of plaintiff's home, and throughout the length of the block. Dirt and rock from the excavation were piled along the east or inner side of the ditch so as to cover in places the sidewalk, and extended up to the rock wall which constituted the property line. There was a pile of dirt over the sidewalk and extending up to the rock wall, immediately south of the line of the driveway. The fuse and cap by which plaintiff was injured was found by him partly sticking out of this pile of dirt, which was about two and one-half feet high. It was found about a foot from the rock wall. Upon the occasion under con-

sideration, the plaintiff, playing with a little wagon, coasted down the driveway. The guiding handle of his wagon was or became loose. The plaintiff pulled the fuse out of the dirt pile to use it in tying the handle of his wagon. The fuse was a little smaller than a pencil, and had somewhat the appearance of a piece of rope, and was about fifteen inches long. About one-half of it was sticking out of the dirt. The cap, about one and one-half inches long, was on the exposed end. The plaintiff referred to it as "a rope with a piece of copper on the end."

The cap interfered with his purpose and he undertook to remove the cap with his pocket knife, and the explosion resulted. This fuse had been sticking out of the pile of dirt for approximately two months, according to the testimony of the plaintiff's father, but plaintiff himself said he was not positive he had seen this one before. Plaintiff's father testified that while the work of excavation was going on he had been obliged several times to shovel dirt and rock out of the driveway entrance, and that he had seen the fuse in question sticking out of the dirt, and saw it afterward as he would drive his car into the driveway; that it was covered with snow part of the time; that he did not remove it, and said nothing about it to anyone. The testimony shows that there were or had been many fuses or pieces of fuse scattered along the line of the work, but that nearly all of these were fuses whose caps had been exploded. The testimony of the plaintiff is fairly definite that he only saw two having a cap—the one which injured him and the one upon which he "rammed" his heel, found near the 56th Street. Another witness, a boy of fourteen living nearby, testified that he found and picked up a fuse with a cap on it near the ditch and about 100 feet south of 56th Street. This occurred about two weeks after plaintiff was injured.

The plaintiff's father testified concerning the fuse he saw by the driveway, on cross examination:

"Q. You thought it was a fuse, didn't you?" A. I thought it was a fuse that had been used, the same as hundreds of others that I saw around there. "Q. You saw

the cap on the end?    A.   I didn't know anything more about the cap than a fuse.''

He testified that he did not know it was loaded or harmful; that if he had thought it was dangerous it would have been removed.   This fuse sticking out of the dirt about one foot outside of the rock wall or property line, was within the space between the wall and the sidewalk. This space was about eighteen inches wide.   The plaintiff testified that he knew explosives were being used and that these were kept ''over in a field'' from the house; that he knew explosives were carried over in a box, or something, by a man, and were used in blasting rock, and he knew it was dangerous about the ditch when the explosives were being used.

During the time work was going on an inspector from the office of the city engineer was constantly present.  Mr. Hartung, city engineer, testified that he was there himself nearly every day, and that he saw no fuses with caps about the work, except when they were in the hands of the men for use.   He testified that the blasting foreman on the job was considered to be a careful and competent man. There was testimony that blasting had been going on in two quarries each distant several blocks from plaintiff's home, and also blasting had been done upon some other city work in that section of the city.   The foreman in charge of the blasting testified that when they were blasting in a given number of holes, made for that purpose, four, five or six in number, he would bring fuses equal to the number of holes, and no more.   This witness testified also as to how he ''crimped'' the cap on the fuses used by the defendant Construction Company.   He testified that the cap of the fuse introduced in evidence as having exploded in the hands of plaintiff was not crimped, as were those used by him.   He testified in effect that the caps used had an open end and an explosive end; that the end of a piece of fuse was inserted into the open end of the cap, and the cap crimped or closed about the fuse with an instrument known as calipers, and that the exploded cap shown him as having injured the plaintiff had not

been crimped with calipers, but with a knife or some other means. He testified that crimping the cap about the end was necessary not only to hold the fuse in contact with the powder in the cap, but to prevent dampness of the powder by exposure. But, he testified also that the cap which exploded and injured the plaintiff was of the same make and kind as those used by the Construction Company.

' His testimony was that in cutting this ditch, dirt was taken out to a depth of about five feet; that below this was the rock which required blasting, and that the dirt thrown out over the sidewalk had been there for a considerable time before the blasting of the rock was done. The testimony of W. D. Boyle, president of the Construction Company, and of the foreman employee immediately in charge of the blasting, was that they did not see any fuse sticking in the dirt, as was testified to by plaintiff and his father; that they saw no unused fuses and caps about the work, and left none there.

A witness living near, who attended to lighting the ditch at night during the suspension of work, testified that he saw nothing of this fuse. The plaintiff was shown three exploded or ragged fuses. He identified the one he thought connected with his injuries. ''It was more ragged.'' He was not positive in his statement as to this. It is argued for plaintiff that this showed this particular fuse had been used in a blast, but that the cap had not then exploded, and that it had been thrown out where it was found. Defendants' foreman testified that there was no misfire on that job. It is also urged for defendants that the interval—several weeks—between the suspension of work, and plaintiff's injury, precludes the idea that this fuse was temporarily laid where it was by a workman who intended to make immediate use of it.

The plaintiff's testimony is that it required effort on his part to pull the fuse loose from the dirt. The official Weather Observer was called by plaintiff to testify to the conditions of the weather. He testified that there was some rain, sleet and snow at intervals during January and in February up to the 11th, but that the precipitation of

moisture during that period was below the normal, and as to the temperature during the period mentioned that it was at no time as low as zero, but in January was much of the time below the freezing point, but during the period covered in February ran daily from about the freezing point to a temperature of approximately fifty degrees. The injury to plaintiff occurred at about 3:30 in the afternoon.

That the plaintiff was injured by the explosion of a cap, to which was attached a piece of fuse, is beyond question, and his testimony as to the place where he found it is definite in its relation of the circumstances. The central issue of fact in the case is the question whether this cap with its fuse attached was left where it was by defendant Construction Company. The trial judge and the jury saw the exploded cap, and others like it unexploded, and saw the process of crimping a cap illustrated by the foreman, and heard his explanation, as well as the testimony upon all the other circumstances tending to identify this cap and fuse with the operations of the Construction Company.

*Inference from Facts.*

Under the issue presented by the peremptory instruction the plaintiff is entitled to have the evidence in his favor taken as true, and to have the benefit of every reasonable inference to be drawn therefrom. [St. Louis v. Mo. Pac. Ry. Co., 114 Mo. 13; Bender v. St. Louis & S. F. Ry. Co., 137 Mo. 240; Pauck v. St. Louis Beef & Prov. Co., 159 Mo. 467.] And "negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence." [Baird v. Citizens' Ry. Co., 146 Mo. l. c. 281.] The danger involved in leaving an article such as was here shown, explosive under a slight concussion, accessible to children or boys of the age of the plaintiff, is manifest, and upon the vital question, whether it was left where it was by the defendant Construction Company, the issue was one for the jury.

The evidence for plaintiff upon this issue is not direct, but it cannot be said, as a matter of law, under the circumstances shown, that there was failure of proof.

The defendant Construction Company has cited Purcell v. Tennent Shoe Company, 187 Mo. 276; Furber v. K. C. Bolt & Nut Co., 185 Mo. 301; Coin v. Lounge Co., 222 Mo. 488, and Warner v. St. L. & M. R. Ry. Co., 178 Mo. 125, as authorities upon the claim of failure of plaintiff to sustain the burden of proof showing that the accident resulted from a cause for which the defendant is liable. A consideration of those cases does not lead to the conclusion asked by defendant Construction Company. They are interesting illustrations of the application of the general rule invoked by defendants, but the application of the rule is governed by the facts in the particular case. In the instant case the dirt was taken out and piled to the side of the trench. After that, preparation was made for blasting rock. A number of holes were drilled in the rock. The foreman brought sticks of dynamite and fuses and caps from the places where they were kept.

Preparatory to adjusting these for shots in the set of holes made, he dropped or placed them along at convenient points. These acts coupled with the fact that the fuse and cap which injured the plaintiff were found in the dirt thrown out by the Construction Company by the side of the ditch with the other circumstances shown, while not conclusive of defendant's connection with this particular cap, do present a question to be answered by the jury. The nature of the answer is one about which reasonable men might differ.

The defendant Construction Company also complains of certain remarks made by plaintiff's attorney in his argument to the jury, and assigns as error the refusal of the court to discharge the jury, or to sufficiently rebuke counsel and instruct the jury. In the closing argument Mr. Popham, one of plaintiff's attorneys, referring to the argument that had been made by the attorney for defendant said:

*Argument to Jury.*

"He told you that there was not a bit of affirmative testimony in this case, as to who left that cap there, and he told you that unless there was affirmative testimony

as to who left that cap there, you couldn't find for the plaintiff. Now, he said that didn't he? And yet, His Honor says there is evidence in this case of who left the cap there, because His Honor submitted that evidence to the jury to pass upon, and if there wasn't any evidence sufficient upon which to submit that question to the jury, His Honor wouldn't have submitted it."

Upon objection of defendant, and after a discussion out of the hearing of the jury, the court sustained defendant's objection, and requested plaintiff's attorney to modify his statement and explain it. Then, to the jury, plaintiff's attorney said: "All right, I make this statement to the jury. When Mr. Bush said there was no evidence in this case as to who left the cap there, he is going outside of the record, and I say, and this is all I say in this connection: If there wasn't any evidence in this case upon which to submit that question to you, to this jury, the court wouldn't have submitted it, that is my statement. That is all I have to say."

Defendant's attorney again objected to this as being a deductive statement by plaintiff that the court recognized that the defendant did put that cap there, and for that reason let it go to the jury. The court then said to the jury:

"The court instructs the jury that in no part of the instructions has the court undertaken to instruct you how you shall construe the evidence, neither has the court undertaken to instruct you as to the credibility of the witnesses—that is left to you, according to the instructions that was left entirely to you. The facts are left to you to construe."

Thereupon plaintiff's attorney continuing said to the jury: "I want to say that I heartily concur in that statement, and that is all I have argued, that the question of facts is here for this jury, according to the evidence introduced."

The plaintiff's attorney is subject to criticism in that the words used by him in the first passage quoted, in

themselves, were susceptible of a construction unfair to the defendant. But, the jury were told in the instruction authorizing a recovery that a verdict for plaintiff was conditioned upon their finding from the evidence that the cap was left where it was found, by defendant Construction Company. Clearly, this question of fact was the storm center of the case, and in view of the circumstances and of the further remarks, and the oral instruction given the court, it will not be presumed that the jury did not clearly understand that upon them alone rested the duty and responsibility, under the evidence, of giving answer to that question of fact directly submitted to them. The showing made does not justify setting aside the verdict.

The testimony shows that the injuries received by the plaintiff were of a serious and permanent character.

**Excessive Verdict.** In the motion for a new trial there was an assignment that the verdict was excessive, but there is no assignment of error here grounded upon that claim, nor discussion of that issue.

Coming to a consideration of plaintiff's appeal from the judgment in favor of Kansas City and the sureties

**Liability of City and Sureties.** upon the bond, certain provisions of the contract or bond are to be noticed. Concerning the privileges of the contractor in the street it has certain provisions, and also the following:

"Contractors may also occupy all the sidewalk for depositing material, excepting six feet next to the street line." It has the following provision concerning precautions to be taken:

"*Precautions.* The contractor shall put up and maintain sufficient lights at night, and shall erect and maintain suitable barricades, and take any and all other proper precautions to guard against damages or injury to person or property, and shall interfere as little as practicable with the use of streets along or across which sewers are to be constructed."

Concerning supervision of the city over the work it contains the following provisions:

"*Manner of Prosecution.* The work herein provided for shall be commenced and carried on at such points, as may be directed by the engineer, and shall be prosecuted with such diligence and with such force, and in such manner as the engineer may direct so as to complete the work within the time herein specified.

"*Workmen.* The contractor shall employ only competent foremen and skilled laborers and shall promptly discharge any man or men who refuse to obey the orders of the engineer, or who are considered incompetent or disorderly by such engineer.

"*City to Have Access to Contractor's Work and Records.* The city shall have full and free access to the work of the contractor to the end that the quality and progress of the work may be correctly determined. And the city shall have access to the records of the contractor to such degree that it may satisfy itself that the contractor has fulfilled the stipulations of this contract as to payment for labor and materials, and any and all other provisions whose fulfillment cannot be determined by inspection of the work itself."

There is also a recital that: "Power is hereby vested in the Board of Public Works by Kansas City, to suspend or annul this contract, or to suspend the doing of any work thereunder at any time for any failure on the part of the party of the first part to fulfill the same, or for other good cause."

Somewhat germane to the provisions above set out is the following provision:

"*Contractor an Independent Contractor.* It is expressly agreed and understood that the contractor is in all respects an independent contractor as to such work, notwithstanding in certain respects the contractor is bound to follow the directions of the city engineer, and the Board of Public Works, and that the contractor is in no respect an agent, servant or employee of the city."

There is a long provision concerning the protection of public utilities, and at the end of that provision, and connected with it, is the provision which plaintiff's attorneys emphasize in their brief and upon which they seem mainly to rely in their claim of liability of the sureties in this action. Preliminary to setting out the particular provision last referred to, so much of the context preceding is given, as is necessary to show the connection:

"*Protecting Public Utilities.* The contractor shall give reasonable notice to the owner or owners of steam, gas, water or other pipes or conduits, either public or private, steam railroads and street railway, and to other owners of property when such property is liable to injury or damage by the execution of the work so that the owner of such utility or other property may remove or protect its property and the improvements thereon, if they so desire."

Then follows provisions for structural and financial adjustments between the contractor and the utility owners that may be made necessary by the manner of doing the work. Following that is the subdivision closing with the provision emphasized by plaintiff:

"The contractor shall use every precaution on the work to prevent harm or accident to said railway companies, their tracks, rolling stock, property, and passengers, and to any person legitimately employed on the premises; and the contractor shall assume all liability for damages accruing from any accident which may be due to his carelessness, omission or neglect; he shall prosecute the work of constructing the sewer under and along such tracks and near such property as may be liable to damage thereby as rapidly as possible when once the work is begun. Any injury resulting to persons or to private or public property from the failure to give such notice, or from the negligence or misconduct on the part of the contractor, his agents, servants and employees in the prosecution of the work under his contract, must be repaired by the contractor and his bondsmen; and the

damage caused thereby must be paid by such contractor and his bondsmen at their own expense."

There are two provisions expressly authorizing suits on the bond by persons not parties to it, and designating the classes of persons so authorized. The first of these follows immediately after the provision last above quoted, and is as follows:

"Any person whose property has been injured or damaged by such failure, negligence or misconduct on behalf of the contractor as aforesaid, shall have the right to sue on this contract in any court of competent jurisdiction in Jackson County, Missouri, in the name of the city, in accordance with the charter of the city relating to the same."

There is another provision authorizing persons not parties to the bond to sue upon it, and designating them. This is found in the "Faithful Performance" paragraph of the bond, wherein the sureties guarantee that the contractor will well and truly perform all the covenants, "including all damages, costs and expenses sustained by public utilities and others in the protection of their properties during the construction of the work, as herein provided for or caused by the negligence, carelessness of the contractor in the prosecution of the work" and "pay for the work and labor of all laborers, sub-contractors and teamsters, teams and wagons employed on the work, and for all materials used therein," with the provision that if such persons be not paid within ten days after their debts come due, they are entitled "to sue and recover from said second parties or either of them, the amount due or unpaid to them, by said first party."

The specifications made part of the contract provided that only such character of explosives were to be used as were permitted by the city engineer; that no more be kept on the line of work than was required for the twelve hours of work next ensuing; that the supplies be divided as far as possible and kept in a fire-proof structure under lock, the key to which should be only in the hands of the foreman or other responsible person; that the amount

kept in any one place should not exceed the limit permitted by any ordinance of the city, and that caps and explosives should not be kept in the same place with other explosives, and that in freezing weather special precautions should be taken in the care and manipulation of dynamite.

The bond also contained the provisions that the contractor should observe all ordinances in relation to obstructing streets, keeping open passage way and protecting the same where exposed and generally all ordinances controlling or limiting those engaged on the work and provided that "the first and second parties bind themselves to indemnify and save harmless Kansas City from all suits or actions of every kind and description, brought against the city for or on account of any injuries or damages received or sustained by any party or parties from the negligence of said contractor, or his servants, or agents in doing the work herein contracted for, or by or in consequence of any negligence in guarding the same or in using any improper material in its construction, or by or on account of any negligent act or omission of the said first party, or his servants or agents."

The provisions so set out or stated, are all the provisions bearing upon the relations and obligations created by the contract and bond, which are pertinent in any way to the issues presented in the cause.

Coming to the situation of the defendants-sureties: Their relation to the subject of this suit depends

**Sureties.** upon contract, and their liability to the plaintiff, if any, can be founded only upon an obligation undertaken by them, conferring the right upon the plaintiff to maintain this suit against them. The whole contract must be considered, and the relation of its various provisions to each other, and to the whole. "Courts construe contracts and ascertain their meaning from all of the provisions of the contract and not from single words or phrases or sentences, and when the intention of the contracting parties is thus ascertained, that

intention will be effectuated, unless it violates some inexorable rule of law.'' [Buxton v. Kroeger, 219 Mo. l. c. 246; Sconce v. Lumber Co., 258 Mo. l. c. 622.]

The plaintiff's attorneys have pointed out in their brief the particular provision of the contract upon which they rely in this action against the sureties, and have quoted it in the following manner: ''Any injury resulting to persons or to private or public property from the negligence or misconduct on the part of the contractor, his agents, servants and employees in the prosecution of the work under his contract must be repaired by the contractor and his bondsmen, and the damages caused *thereby must be paid by such contractor and his bondsmen at their* own expense.''

The clause thus quoted has been set out adready, in full, and its context and connection shown. It is a part of the long provision hereinbefore referred to and in part set out, under the subject: ''Protecting Public Utilities.'' Certain persons are designated in the numerous provisions upon that subject. They are mentioned as the owners of public utilities, or of ''other property liable to be affected,'' ''passengers'' on street railways, and ''any person legitimately employed on the premises.'' The excerpt relied upon by plaintiff, it may be noted, makes no reference to suits, but the provision immediately following it does, and provides that ''any person whose property has been injured or damaged by such failure, negligence or misconduct shall have the right to sue on this contract, in the name of the city in accordance with the charter relating to the same.'' The only provision in the contract designating persons, not parties, as authorized to sue the sureties, is the provision authorizing materialmen, laborers and the like to sue.

The question immediately in issue is not one of power of the city, as a principal maker of the contract, to give to the plaintiff the right to sue the sureties, but the question is, whether the city has actually undertaken so to do, by the terms of the contract it has made with the contractor and his sureties. The question of power

so to contract, and the question whether a city has in fact by contracts similar to this in character, given to a third party the right to sue the sureties, have both been under consideration by this court. In Kansas City ex rel. Blumb v. O'Connell, 99 Mo. 357, the plaintiff while passing along the street was injured through being struck by a fragment of stone thrown out in blasting for a sewer, and by the negligence of the contractor. It was held that while the terms of the bond gave a right of action against the sureties to laborers employed on the work, it was a bond of indemnity only, to the city, in respect of claim by others for damages sustained through the negligence of the contractor.

That bond contained a provision that the contractor should be responsible for all damages to persons or property from negligence or carelessness in doing the work, and should indemnify the city against losses or claims for damages on account of his neglect, and it contained a covenant to pay laborers, and this covenant was in obedience to a statutory charter provision giving to laborers the right to sue the sureties. It was held that the bond in respect of persons other than laborers was "not an agreement with the city for the benefit of third persons, but for the protection and benefit of the city." The question whether the city could require the contractor to give a bond available to third persons was not decided.

In K. C. Sewer Pipe Co. v. Thompson, 120 Mo. 218, the claim of plaintiff was for unpaid materials furnished for a sewer. The bond provided that the sureties should be liable for unpaid materials. This court held that the city (Sedalia) under its charter was without corporate capacity so to contract.

In St. Louis v. Von Phul, 133 Mo. 561, the suit was to the use of a materialman, and against the contractor and his sureties. The obligation sued on was conditioned for the payment of claims of laborers and persons furnishing materials, and it provided that the bond might be sued on at the instance of any such designated persons. The corporate power of the city to make such a contract was sus-

tained, without dissent, by the Court, en Banc, and the decision in the K. C. Sewer Pipe Case was expressly overruled.

In St. Louis v. Wright Cont. Co., 202 Mo. 451, the city, as trustee for the adjacent property owners, sued the sureties and the contractor, who had wholly refused to perform his contract to construct a sewer, and thereby had made it necessary to re-let the work at a higher price. It was held that the city could not make a contract for the benefit of these property owners whereby they could be re-imbursed for the excess payments incident to the re-letting, but it was also held that the contract designated the third persons who might sue upon it, and thereby excluded those not so designated. In that case the bond expressly provided that suits might be maintained by laborers or persons furnishing materials, not paid by the contractor. Upon this phase, the court said at page 465:

"The bond not only named the third parties for whose benefit it was given, but it went further, by way of limitation, and stated what third parties could sue thereon. If the designation of the third parties who could sue on the bond did not amount to the limitation, the third parties for whose benefit the contract was made, then why name them at all, because otherwise not only those named but all others could maintain a suit if respondent is correct in its contention."

Applying this rule to the bond in suit, with its designation of two classes of persons who are entitled to sue, and its provision of indemnity of the city against all actions brought for injuries or damages sustained through the negligence of the contractor, the intention seems to be clear that only those third persons falling within the designated classes should be entitled to sue upon the bond.

Counsel for plaintiff have also cited Devers v. Howard, 144 Mo. 671, and Kansas City to use v. Youmans, 213 Mo. 151, in support of their contention that the trial court erred in directing a verdict for the defendant sureties. In Devers v. Howard the contract was one for the digging of a well for the city of Bethany. The contract

required the contractor to pay for all labor and materials. The city seems to have reserved the right to withhold payment to the contractor until or unless claims for labor and material were paid, and did in fact pay the contractor upon an agreement that the money so paid should be applied to discharge the plaintiff's claim for materials, and the defendant accepted it as under that agreement. The plaintiff was sustained in his suit against the contractor and sureties. In Kansas City to use v. Youmans, the suit was upon an unpaid claim for materials furnished to a sewer contractor. The contract contained a clause expressly authorizing the laborers and materialmen to sue and recover. These cases have no bearing upon the issue here—the question whether this plaintiff may sue upon the contract involved in this suit.

No charter provision of Kansas City is pointed out authorizing a person, situated as is the plaintiff, to sue upon the bond, nor any statutory provision requiring bonds of this kind so to provide. Section 1240, Revised Statutes 1919, has reference only to material and labor.

Laying aside, as not here involved, the question of what the city might lawfully require in a bond of this class, it is enough to say that the contract or bond here under consideration, construed according to the ordinary rules and in accordance with what was said in Kansas City ex rel. Blumb v. O'Connell and in St. Louis v. Wright Construction Company, does not authorize persons situated as is the plaintiff to sue and recover upon it. Its terms are not aided or broadened by any statute. It points out the classes authorized to sue the sureties, and otherwise it provides protection or indemnity to the city. The court did not err in directing a verdict for defendant sureties.

There remains to be considered the relation of Kansas City and the contention of plaintiff that the court erred in directing a verdict for the city. It is urged that a city cannot escape liability on the ground that the Construction Company was an independent contractor, because the city maintained su-

Liability of City.

pervision and control over the work. In a number of cases cited by plaintiff the question whether the party doing work was an independent contractor, or not, was submitted to the jury for the reason that the contract was not in writing, and its terms were in dispute, but here the terms are fixed by the writing. Contracts similar to this, made by cities, have been before this court in a considerable number of cases, wherein was involved the question of liability of the city for the negligent acts of the contractor. In the comparatively early case of Blumb v. City of Kansas, 84 Mo. 112, the plaintiff while passing along the street was injured while blasting was being done by O'Connell, the contractor. The court said, at page 115:

"By the contract between the city and O'Connell, the former had the right to annul the contract or suspend work under it, at any time during its progress, whenever, in the judgment of the city engineer, there was good reason for doing so. It was also made obligatory upon O'Connell to discharge any workman engaged upon the work who should disobey any direction of the city engineer, as to the workmanship, or material used, or expended upon the work."

It was said that the reservation by the city "had no reference to the manner of doing the work, but only to the workmanship, the character of the work, and the quality of the materials used." It was held that O'Connell was an independent contractor and that the city was not liable for his negligence in the manner of blasting.

In McGrath v. St. Louis, 215 Mo. 191, the contract was one for paving an alley, and the injury complained of was to adjacent property resulting from the excavation made by the contractor. The contract provided that the constractor should "conform to the street commissioner's directions as to the order of time in which different parts of the work shall be done as well as to all his other instructions as to the mode of doing the same." It empowered the street commissioner, in the the absence of the contractor, to give orders to the superintendent in charge for the contractor, and authorized the discharge of workmen re-

fusing or neglecting to obey the instructions of the street commissioner, and gave the street commissioner power to condemn work and require reconstruction. These provisions construed with all the other terms of the contract were held not to make the contractor an agent of the city, nor deprive him of his character of independent contractor. The decision in Blumb v. Kansas City was followed, and what had been said in Crenshaw v. Ullman, 113 Mo. 633, was considered.

In Salmon v. Kansas City, 241 Mo. 14, the plaintiff was an employee of the contractor, and while drilling a hole for blasting was injured by the explosion of a charge left unexploded through the negligence of the contractor's foreman. The contract involved in that case was in all substantial particulars the same as the one here under consideration. The petition of the plaintiff in that case proceeded upon the theory that because of the power of control reserved in the contract, to the city's engineer, the Construction Company was not an independent contractor, and, hence, the city was liable. The substance of the many provisions in the contract concerning supervision and control of the work, and requirement of obedience of the contractor to instructions and orders given, and to ordinances and charter provisions, is set out in the opinion. No substantial distinction can be drawn between that contract and this one upon the relation created between the city and the contractor. The majority of the Court, en Banc, concurred in holding that the contractor was an independent contractor.

The plaintiff has cited numerous cases, some in this court and others in the Courts of Appeals, in support of the contention that defendant Construction Company was not an independent contractor. Most of them are readily distinguishable from this case. Among those cited is Scott v. Springfield, 81 Mo. App. 312, which was referred to and distinguished in the Salmon Case. The more recent decisions of this court cited are Gayle v. Mo. Foundry Co., 177 Mo. 427; Loth v. Theater Co., 197 Mo. 328; Benton v. St. Louis, 217 Mo. 687; Jewel v. Nut and Bolt Co.,

231 Mo. 176. None of these can be regarded as controlling authority upon the immediate question as against what was held in the Salmon Case; and the fact that the contractual provisions there and here are substantially the same, makes the decision in that case controlling here.

The plaintiff makes the further contention that the use of high explosives in blasting for the sewer was inherently highly dangerous, and that it being so, the city cannot shift liability upon an independent contractor. In Salmon v. Kansas City, supra, the danger inherent in blasting for a sewer was not an uppermost question, but rather the manner in which the blasting, in that instance, was done. In Holman v. Clark, 272 Mo. 266, where the injury complained of was to adjacent property damaged by a premature explosion of dynamite to be used in blasting for a sewer, the court said, at page 275:

Inherent Danger.

"Blasting being necessary, the use of explosives must have been foreseen by the city, but such use is lawful; and having in readiness, near the work, dynamite in proper quantities for use in blasting is neither necessarily nor so palpably dangerous, when managed in the ordinary way, as to constitute a thing inherently dangerous."

In that case negligence was predicated upon the temporary storing of dynamite in a shed near and upon a street, wherein was being operated a gasoline engine, which condition it was alleged constituted a nuisance of which it was charged the city knew, or by the exercise of ordinary care could have known. The case proceeded upon the theory on both sides that the contractor was an independent contractor, but the character of supervision reserved by the city under the contract is not stated. The dynamite had been in the place where it was but a short time. The evidence for the plaintiff tending to charge the city with notice was considered, and held insufficient to impute notice to the city. What was said in that case as to the danger incident to the use of explosives in blasting is applicable in a general way here. The blasting in the case at bar and the use of explosives were contemplated,

were necessary, and lawful, and under observance of the precautions required were not necessarily, nor so palpably, dangerous as to constitute a thing inherently dangerous. But in this case the injury to plaintiff did not occur while blasting was being done, but several weeks later. The injury here complained of did not result from the act of performance by the Construction Company of its contract with the city. It resulted from a negligent act of the contractor collateral to the work itself, failure to detect the unexploded cap, if it was one attempted to be used in·making a shot, or, negligent leaving, without attempted use, of an unexploded cap. In either event the negligent act or omission of the Construction Company was collateral to the performance of the contract which did not contemplate or give sanction to carelessness. Upon this ground the contractee, the city, cannot be held liable. [Salmon v. Kansas City, 241 Mo. 1. c. 39, 41; Press v. Penny & Gentles, 242 Mo. 1. c. 106; 4 Dillon on Municipal Corporations (5 Ed.) sec. 1723; McQuillin on Municipal Corporations, secs 2262-2264.]

The plaintiff assigns as error the refusal of the court to admit testimony offered as to the insolvency and irresponsibility of the Boyle Construction Company. The petition alleged that the company was reckless and habitually performed its work in an unsafe manner, and was insolvent and irresponsible, and that this was known to the city. The city engineer in charge of the division of sewer work was introduced by plaintiff. His testimony was that this company and its managers were efficient in their work, and that during the time, twenty six months, in which he had been in charge of sewer work, this company had not had any accidents, but he knew nothing as to what accidents they might have had prior to that time. The plaintiff's attorney then made the offer, the rejection of which is complained of. It was an offer to prove that the Boyle Construction Company had been organized within the last few years; that W. D. Boyle and others had been associated in prior contracting companies, under the same

*Insolvent and Reckless Contractor.*

control; that the defendant company is organized for two thousand dollars, but has assets of many times that amount; that every time the parties concerned had a bad accident they organized another company; and that they had had numerous blasting accidents. The basis of the assignment here is, that the offer went to the insolvency and irresponsibility of the Construction Company. The offer as made raised issues collateral and remote from the issues made by the pleadings, and as such was rejected by the court, and properly so.

Finally, it is urged that defendant Kansas City owed to plaintiff the non-delegable primary duty of keeping its sidewalks, and the space between the sidewalks and the property line, reasonably safe for plaintiff and others; that the explosive cap had lain in the pile of dirt and exposed for two months or more, and thereby the city, as a matter of law, was charged with notice, and that plaintiff was entitled to a submission of the city's negligence to the jury. Plaintiff's attorneys under this assignment have cited many decisions of this court and of the courts of appeals holding a city liable, but none of them discloses a situation closely similar to the one here presented. They involve consideration in varying degrees of the character of the object which was the cause of the injury, its location relative to the traveled way of the street, the length of time it had existed, whether placed or permitted by the city directly, or by some one authorized to occupy the street for a certain purpose, or by some one without any authority, and the notice, actual or constructive, of the city of its existence at the place. In Bassett v. St. Joseph, 53 Mo. 290, the object was an open ditch extending from abutting property to the sidewalk, into which the plaintiff fell in dodging the kick of a mule. In Welsh v. St. Louis, 73 Mo. 71, the plaintiff fell into a sewer ditch left unguarded by the contractor. In Wiggin v. St. Louis, 135 Mo. 561, the plaintiff fell into an excavation while walking from a sidewalk over two boards, twenty inches wide, placed over the ditch by a house-building contractor. In Russell

*Neglect of Sidewalk.*

v. Columbia, 74 Mo. 480, the plaintiff fell into a ditch made by the local gas company in laying its mains, left open at the place for three days. Having authorized the making of the ditch, the city was charged with notice. In Straub v. St. Louis, 175 Mo. 413, a child was injured while playing upon an old counter placed and left for several days upon the sidewalk by a merchant which the city was held bound to see, and where children were likely to play. In Coffey v. Carthage, 186 Mo. 573, by ordinance, the entire space between the curb and the lot line was set apart for a sidewalk, but there was left in fact a grass plot between the sidewalk and the property line. The plaintiff stepped into a hole in the flagstone at the edge of the pavement. It was held that the fact she was walking on the grass plot did not bar a recovery. In Benton v. St. Louis, 217 Mo. 687, a boy fell into and was drowned in a drainage basin at or under an unsafe sidewalk. The basin and the sidewalk had been constructed by adjacent property owners of their own motion, but the street was public. In Capp v. St. Louis, 251 Mo. 345, a child playing, fell into and drowned in a large unguarded pool in a public park. In Shippey v. Kansas City, 254 Mo. 1, the plaintiff was injured through a fall upon him of a large wooden billboard which had stood for a long time at the line of the sidewalk. It was held the city must take notice of the natural decay of such wood or timber structures. In Hunt v. St. Louis, 278 Mo. 213, a paving contractor had placed large quantities of macadam material in the street, leaving a narrow and insufficient way for travel, alleged to have been unlighted, and plaintiff's wagon was run into the rock and turned over. In Buttron v. Brindell and St. Louis, 228 Mo. 622, a child fell into a large lime pit constructed in a public street by permission of the city. A plank extended from the sidewalk to and over the edge of the lime pit, which was left uncovered and unguarded and had been used for several days for slacking lime. Under the circumstances the city was held not entitled to notice, but was charged with notice of what was being done, and of the characteristics of lime in the proc-

ess of slacking. In Ray v. Poplar Bluff, 70 Mo. App. 252, a woman walking at night upon the foot-walk of a bridge within the city fell into the river and was drowned. A part of the foot-walk had recently before been taken up in the work preparatory to extending under the walk a water main, by permission of the city, and it was con-ceded that it was necessary to take up part of the walk while laying the main. The open place was unguarded and alleged to have been unlighted. In Fockler v. Kansas City, 94 Mo. App. 464, the obstruction was a pile of stones over which plaintiff fell, and which had lain for some time between the curb and the sidewalk. It was held to be the duty of the city to keep this space reasonably safe from obstructions of that character, although that space was not intended for the ordinary use of pedestrians. This was held under Walker v. Kansas City, 99 Mo. l. c. 652. In Hutchinson v. Mullins, 189 Mo. App. 438, the obstruction was pipe left lying for several months upon a sidewalk by a sewer contractor, and over which the plaintiff tripped and fell.

The question just now under consideration has to do with the duty of the city to keep its streets and sidewalks reasonably safe, and the correlative right of a member of the public to compensation for injuries sustained through failure of the city in the discharge of that duty—a kind of duty which the city cannot shift to another. The liability here under consideration is founded upon the fact that the plaintiff found the cap and fuse within a public street, and not elsewhere. No one of the cases cited affords a parallel to the instant case. Speaking of the liability of the city in Yocum v. Trenton, 20 Mo. App. 489, for an injury suffered by a defect in a sidewalk, Philips, J., said, at page 493:

"It must have had actual notice of the defect, with reasonable time thereafter to make the needed repair, or the defect must have been of such an obvious or notorious character, or have existed for such a length of time, that the law will raise the presumption that defendant either knew of it, or might have known of it, by the exercise of

that care and diligence due from its servants to the public in supervising and inspecting its streets and sidewalks.''

Within the foregoing terms would be included imputation of notice to the city as in Russell v. Columbia, and Buttron v. St. Louis, and like cases, wherein another, by express permission of the city had excavated a ditch, or constructed a lime pit in the street. These were things done not only pursuant to authority, but they were also things obvious, and were the very things which, in a direct way, gave rise to the injuries complained of; and the city was bound to anticipate and guard the public against the obvious dangers thus created. In the instant case the object causing the injury was not the constructed thing itself, nor a thing causing injury in its actual use in the work, but was an instrumentality incidental or collateral, but necessary to use in the work. It was left where it was through the negligence of the contractor. Its presence there was not known to the officers or servants of the city, that is, there is no evidence that any officer or employee of the city had actual notice that this fuse with its unexploded cap had been left in the dirt thrown out between the sidewalk proper, and the property line. But the city must be charged with notice that many fuses had been used in this work along that place, with knowledge of their dangerous character and of the possibility that through inadvertence or failure to explode in a blast, one or more of them might be left along or near this ditch in the street. There is evidence tending to show that three were found adjacent to this trench and within this street. Many fuses whose caps had been exploded were lying about. The difference between them, the evidence tends to show, was not readily discernible by children or persons not informed as to their character. The work stood suspended—the trench unfilled and the loose dirt on and over the sidewalk—for nearly two months. There was evidence for the plaintiff tending to show that this particular fuse, with its unexploded cap at the outer end, protruded six inches or more from the dirt thrown over into the space between the sidewalk and the wall on the

304 Mo. Sup.—13

property line, and so remained during the period of nearly two months. Arising out of the city's continuing duty to keep its streets reasonably safe for the use of the public, including children, was the duty to use ordinary care to see to it that none of these explosive instruments were left within the street. This duty, as to the street, and to a member of the public on the street, was not shifted nor discharged by engaging an independent contractor to do the work. The court erred in directing a verdict for the city. The question of its liability upon this issue should have been submitted to the jury.

It results that the judgment should be reversed as to the city of Kansas City and affirmed as to the other defendants, and the cause remanded to the circuit court for further proceedings not inconsistent with the views herein expressed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.